No. 9290.

## CORPORATION OF MINDEN VS. SILVERSTEIN & DITTMER.

A legislative grant to a municipal corporation to "pass all such ordinances, rules and regulations as they may deem necessary for the police and government of the said town," and "to have exclusive control of the license and sale of spirituous or intoxicating liquors," implies as a necessary incident thereto the power to pass and enforce an ordinance to prohibit the sale of liquors within corporate limits on Sunday, as a police regulation. The exercise of such power is not amenable to the constitutional inhibition against the establishment of any religion by law, or to any other constitutional limitation to legislation.

Corporation of Minden vs. Silverstein & Dittmer.

The defense that the liquor was sold by an employe of the defendant, who is not a clerk or bar-tender, but a mere porter or menial servant, who thus acted beyond the scope of his employment and in disobedience of the proprietors' orders, is good.

APPEAL from the Mayor's Court, Town of Minden.
Crawford, J.

*J. D. & J. T. Watkins* for Plaintiff and Appellee.

*Jas. F. Taylor* for Defendants and Appellants.

The opinion of the Court was delivered by

POCHÉ, J.   Defendants have taken an appeal from a judgment inflicting on them a fine of fifteen dollars for the violation of an ordinance of the town of Minden, which forbids "keepers of saloons or houses where wines or spirituous or malt liquors are kept on sale from selling or giving away the same within the corporate limits on the Sabbath, or between the hours of 12 m. on Saturday night and 12 m. on Sunday night."   *   *   *

By way of exception they charged, and on appeal they contend, that the ordinance is illegal and null:

1. Because it is unauthorized by the town charter.

2. Because it conflicts with the Constitution of the State and of the United States.

3. Because the Legislature is powerless to enact any law, or to delegate the power to any municipal corporation, to prohibit the sale of alcoholic or spirituous liquors, the only power being that to regulate the sale of such liquors.

Their exceptions having been overruled, they pleaded a general denial.

*First*—In support of its power to adopt and enforce the ordinance, plaintiff invokes the following power emanating from the Legislature in the act of incorporation and in an act amending the same :

"To pass all such ordinances, rules and regulations as they may deem necessary for the police and government of the said town." (Act No. 58 of 1853.)

"That the mayor and aldermen, or a majority of them, shall have the exclusive control of the license and sale of spirituous or intoxicating liquors within said corporation." Act No. 10 of 1871.

We think, and we therefore hold, that the power to regulate the sale of liquors clearly and necessarily implies the power to restrict such sales to certain hours of the day, or to certain days of the week.   The exercise of such a power emanates from the police power of the State,

and is one of the necessary incidents of the delegated power to pass all ordinances, rules and regulations which the town authorities may deem necessary for the police and government of the town. The power to regulate or restrict the inherent rights of a citizen to pursue a legal avocation must not be confounded with the power to prohibit the pursuit of such trade or calling. The distinction has always been recognized in jurisprudence, and has been particularly made in all cases involving the exercise of the very power now under consideration.

*Second*—The provision of the Constitution which is held by defendants as clashing with the ordinance is that portion of article 4 which declares that " no law shall be passed respecting an establishment of religion or prohibiting the free exercise thereof."

Pretermitting any expression of opinion as to the wisdom or expediency of such an ordinance, we see nothing in such a regulation which has the remotest tendency to establish any religion, or to interfere in any way with the free exercise of any religious belief.

While it may be that the reason for selecting Sunday as the day on which the liquor traffic is prohibited, rests on the universally admitted belief in the Christian world that that day is the Sabbath of the Lord, and that it is the day of rest, yet the regulation might well be supported on reasons having no connection with Sunday as a Sabbath, but only as a day on which, under existing habits of the people, large numbers congregate in towns and pass the day in idleness, tending to lead to disorder.

The prohibition complained of does not purport even to rest on any religious doctrine or tenet, and it has no pretension to impose any religious observance on any one. It is not more amenable to the prohibition contained in the article of the Constitution than the several provisions of our Code of Practice, which declare that Sunday is a *dies non*, and that Sunday must not be computed in certain legal delays granted for the performance of certain legal acts.

The argument that under the effect of such a regulation the inherent right of the Jew or of any other religious denomination, to observe his Sabbath, which is the last, instead of the first, day of the week, is impaired or abridged, is not tenable. He is left the absolute and unrestrained freedom of disposing of Saturday, his Sabbath, as he may deem proper, or to worship God according to the dictates of his own conscience. He is not thereby required to observe the Christian Sabbath, and he is not checked in his right to pursue other avocations, but he is merely restrained from pursuing, on that day, a traffic which in its results may interfere with the absolute right and the undeniable privilege of others

to observe that day in their own manner, with peace and tranquillity, and without interference from anyone or from any source.

While the question is comparatively new in our jurisprudence, it has been the fruitful source of protracted litigation in several of our sister States, by whose courts of last resort, similar provisions, charged as clashing with constitutional restrictions and limitations entirely similar to ours, have been interpreted in the sense which we have herein adopted. In justice to the labors of the distinguished jurists whose opinions we have carefully studied in this connection, we must say that our conclusions in the present controversy have been superinduced by their reasoning, and by a laudable desire to harmonize the jurisprudence of this State with that of the several States of the Union on a question of such vast importance.

Among numerous cases which we have examined with great care, we refer to the following: Commonwealth vs McClanahan, 2 Met. Ky. 3; Frolickstein vs. Mayor of Mobile, 40 Ala. 725; Karnisch vs. Mayor of Atlanta, 44 Ga. 204; City Council vs. Benjamin, 2 Strob. South Carolina, 508; Specht vs. Commonwealth, 8 Pa. 312; Cincinnati vs. Rice, 15 Ohio, 225; State vs. Welch, 36 Conn. 215.

3. The argument in support of the third ground of resistance, which denies that the power to regulate, implies the right to prohibit, the sale of liquors, seems to rest on the provision of Art. 170 of our Constitution, which declares that the regulation of the sale of alcoholic or spirituous liquors is a police regulation. As was shown in our reasoning on the first point, the police power is the very foundation of support for the exercise of the power in question. Our consideration of that point virtually and practically disposes of this ground.

We, therefore, conclude that the ordinance under consideration finds ample support in legislative grant of power to the corporation as an incident of the police power of the State, and that its adoption and enforcement do not infringe on any constitutional provision, restriction or limitation.

We must now consider the defence on the facts of the case.

The feature of the cause which grants to this Court jurisdiction over the legal question involved, also vests it with jurisdiction over the facts. That element of jurisdiction, which was left in some doubt by the Constitution of 1868, has been materially elucidated by the provision on this subject in the present Constitution, which reads: "In such cases the appeal on the law and the *fact* shall be directly from the court in which the case originated to the Supreme Court." State *ex rel.* Boutrone vs. Judge, 30 Ann. 415.

The evidence shows that the liquor was sold at the defendants' store on a Sunday by one of their employees, who was not a clerk or a bartender, but merely a porter, whose duty was to do menial work in the store; that the liquor was sold out of the presence of either of the defendants, who had forbidden their employees to sell liquors on Sunday; and that the porter was discharged for the reason of his having sold the very glass of liquor which has given rise to this controversy.

As the porter acted in the premises beyond the functions of his employment and without the knowledge or consent of the defendants, and as the evidence does not show that they ratified or approved of his act, but as it appears on the contrary that they discharged him on that account, we cannot agree with the mayor in holding them as transgressors of the ordinance under the circumstances as shown by the record. In our opinion, the case is with them on the facts, and for those reasons we must reverse the judgment of the mayor.

The judgment appealed from is therefore reversed and set aside, and the demand of plaintiff is rejected at its costs in both courts.

---

## CONCURRING OPINION.

MANNING, J. I rest my concurrence on the grounds set forth in State v. Bott, 31 Ann. 663, i. e. that the town-ordinance is a police regulation that the municipal authorities can make for the preservation of public order on a day when its inhabitants are idle from not pursuing their usual vocations, as they might have made Saturday the day of cessation of liquor-selling because on that day country towns are usually flooded by a class that are apt to become disorderly. The same prohibition is often made for election-day and is justified for the same reason, viz that it is a police regulation in the interest of the public peace.

Still, there is force in the argument that the obvious reason why Sunday was selected as the day of prohibition is because the votaries of a particular religion attach a special sanctity to that day, and as that is the controlling motive of the selection, the prohibition is a regulation for the compulsory observance of a particular religion. Christians would have no difficulty or hesitancy in detecting the motive if the town authorities were Jews, and they had forbade the sale of liquor on Saturday and allowed it on Sunday.

To my mind there is no entirely satisfactory answer to that argument. It is always difficult and often impossible to explain or discover the distinction between a regulation made solely in virtue of the police

power and for the preservation of public order alone, and one made for the observance of a particular day set apart by the followers of a particular religion for special religious purposes. Each case must therefore rest on its own facts and circumstances, and these must clearly bring it within the scope of a police regulation or it ought not to be maintained. An oft-quoted writer on Constitutional law well says ;— " The laws against the desecration of the Christian Sabbath by labour and sports are not readily defensible by arguments the force of ·which all would admit.     *     *     *   The Jew who is forced to respect the first day of the week, when his conscience requires of him the observance of the seventh, may plausibly urge that the law discriminates against his religion, and by compelling him to keep a second sabbath in each week unjustly though indirectly punishes him for his religious belief." Cooley's Const. Lim. 476.

Whenever the common-law courts sustain regulations such as this on the ground that Christianity is in a sense however qualified a part of the common-law, they can have no weight with us. The common-law never prevailed here and the Civil law countenances no such pretension. Even in England where that doctrine originated the Lord Chief Justice lately emphatically said ;—" it is no longer possible to affirm that Christianity is a part of the law of the land.     *     *     *   There was a time when that was so in a sense in which it has now ceased to be, a time when heretics and misbelievers were punishable for their opinions, and when the most orthodox species of non-conformity excluded a man from public office." Reg. v. Ramsay and Foote. Reported in London Times. This overrules with one fell swoop the English decisions of a century and discredits the American decisions that followed them.

This is not a matter of sentiment or of feeling. They who laid the foundations of our government knew well the immense and overshadowing importance of guarding against that particular danger, for no provision of our civil polity requires to be more jealously guarded than that American Magna Charta which forever dissociates religion from the State, and erects an insuperable barrier to the punishment of any man for his religion or for the want of it.

Bermudez, C. J. concurs in these views.