171 So. 826

## CITY OF DE RIDDER v. MANGANO.

### Nos. 33983, 33984.

Dec. 21, 1936.

Griffin T. Hawkins, of Lake Charles, Kay & Kay, of De Ridder, and Albert Cox, of Lake Charles, for appellant.

Frank E. Powell, of De Ridder, for appellee.

O'NIELL, Chief Justice.

The defendant, who is the proprietor of a barroom in the City of De Ridder, stands convicted for violating two municipal ordinances, and is appealing from the conviction and sentence in each case. In the case No. 33983 the offense was having a victrola playing in the barroom, in violation of Ordinance No. 111, making it unlawful for a proprietor of a barroom to have a victrola, radio, or any kind of musical instrument playing in his barroom. In the case No. 33984 the defendant's offense was allowing his wife to work as a barmaid in the barroom, in violation of Ordinance No. 112, making it unlawful for the proprietor of a barroom to employ or permit a woman or girl to work in the barroom. The defendant pleaded, in each case, that the ordinance was violative of the Four-

teenth Amendment of the Constitution of the United States, and section 2 of article 1 of the Constitution of Louisiana, in that the ordinance was an attempt to deprive the proprietors of barrooms of their liberty and their property without due process of law, and to deprive them of the equal protection of the law; and that Ordinance No. 112 was an attempt also to discriminate against women and girls, as to their means of earning a livelihood, and thus to deprive them of the equal protection of the law. In that connection the defendant contends that both ordinances are arbitrary and unreasonable, in that their purpose has no relation to public morals or public welfare. The plea was overruled by the judge, in each case. After being convicted, in each case, the defendant, by way of a motion in arrest of judgment, and again by way of a motion for a new trial, renewed his plea that the ordinance was unconstitutional.

The cases are so much alike—being dependent upon the same fundamental principles—that the attorneys on both sides have dealt with them as one case, submitting them on the same briefs.

■ Before the advent of national prohibition, the retail liquor business in Louisiana was regulated, in all of its details, by a statute, Act No. 176 of 1908, known as the Gay-Shattuck Law. After national prohibition was abolished, the Legislature, instead of enacting another such statute as the Gay-Shattuck Law, left it to each parish and municipality to adopt its own regulations of the retail liquor business, by ordinances on the sub-

ject. In section 24 of Act No. 15 of 1934, levying a license tax on the retail liquor business, and prescribing some regulations, the Legislature has declared that the parishes and municipalities shall have authority to enact such ordinances for the regulation of the retail liquor business as are consistent with the Constitution and laws of the state, —provided that no parish or municipality shall, in the exercise of its police power in that respect, regulate the retail liquor business to a greater extent than may be necessary for the protection of the public health, safety, peace and morals. This section of the act of 1934 was amended by Act No. 1 of the Third Extra Session of 1934, and again by Act No. 3 of the First Extra Session of 1935; but no change has been made in the provisions reserving to the parishes and municipalities the authority to adopt ordinances regulating the retail liquor business.

The municipal council of De Ridder, therefore, has express authority from the Legislature to adopt ordinances regulating barrooms, provided the regulations are consistent with the Constitution and laws of the state, and do not go further than is necessary to protect the public welfare. Obviously, the purpose of this proviso in the statute is to forbid the governing authorities of a parish or municipality to adopt such a stringent regulation of the retail liquor business as would amount to local prohibition, without a vote of the electors of the parish or municipality. The only question here is whether either of the ordinances in contest goes futher in the way of regulating

barrooms than is necessary for the welfare of the community—specifically, for the safety, peace or morals of the community.

■ Whether a municipal regulation of barrooms may or may not go further than is necessary for the public welfare is a matter, primarily, for the municipal council to determine. That the ordinances in contest here are within the bounds is shown by the fact that their provisions were taken from the Gay-Shattuck Law. Ordinance No. 111, proscribing music in barrooms, is copied—not literally but substantially—from section 10 of the Gay-Shattuck Law. Ordinance No. 112, proscribing barmaids, is taken from section 5 of the Gay-Shattuck Law, as amended by Act No. 220 of 1916, p. 472, which made it a misdemeanor for a proprietor of a barroom to employ a woman or girl to serve drinks. The same section of the statute forbade the issuing of a retail liquor license to a woman; and the sixth section made it unlawful for a proprietor of a barroom to allow women or girls to drink in the barroom, or to provide a separate apartment where they might enter and drink.

A law which discriminates against a particular business, or class of individuals, is not unconstitutional on that account if the discrimination is not arbitrary but well founded. The retail liquor business is not one which any one may engage in as a matter of right. It is a privilege, for which a special license may be required, and which must be conducted according to the rules and regulations prescribed by the authority granting the license. All

that the fundamental law demands in that respect is that the regulations prescribed shall have some relation to the welfare of the community.

There is nothing arbitrary or unreasonable in either of the ordinances complained of. The presumption is that the city council, in adopting these ordinances, spoke for a majority of the inhabitants of the city. If the ordinance which bans music in barrooms banned music anywhere and everywhere in the city, it would be very unreasonable. Likewise, the ordinance which forbids the employment of women in barrooms would be unreasonable, and would discriminate against the women unjustly, if it forbade the employment of women in places where no harm or mischief might be the natural consequence. But, to forbid the playing of music or the employment of women in barrooms is, obviously, a reasonable regulation of these pleasure resorts. The purpose is to discourage the waste of time and money there, and to avoid the hilarity and disturbance which the combination—wine, women and song—is so apt to cause. At any rate, when the members of a city council, with their knowledge of local conditions, and in their mature wisdom—perhaps having neither romance nor music in their souls—have seen fit to leave off only the women and song, that ought to end the matter as far as the courts are concerned.

Barmaids in this country are an innovation which may require some time to become ingratiated with the habitués of the barrooms as the successors of the bartenders. Only a few weeks ago there ap-

peared in the daily press throughout the country a dispatch from New York, by Universal Service, announcing, under big headlines, that the International Barmen's Association had declared a defensive war against barmaids—of whom there were only 25 employed in the whole city. The slogan, adopted by the association and proclaimed to the world, was "Liquor alone causes enough trouble. Why add women?" Some very striking—and unselfish—reasons were given by the association for the fear that the employing of barmaids generally in this country might become very mischievous. It is sufficient that the fear of such mischief is a reasonable fear, to make a statute or an ordinance which seeks to prevent the mischief a constitutional statute or ordinance.

In Cronin v. Adams, 192 U.S. 108, 24 S.Ct. 219, 48 L.Ed. 365, it was held:

"A municipal ordinance which prohibits liquor sellers from providing wine rooms or other places where females may be supplied with liquor, and from permitting females to be or remain for that purpose where liquor is sold or in any place adjacent thereto or connected therewith, and from employing females to wait or attend upon any person therein, and which forbids females from remaining in any such place and waiting and attending upon any

person, or soliciting drinks therein,—is a valid exercise of the police power, not repugnant to the Federal Constitution."

It is argued for the appellant that he should not be held guilty of "permitting" the woman in this case to work in his barroom, because she is his wife, and because the barroom business which he conducts is presumed to belong to the matrimonial community—and is therefore as much her business as his. The ordinance which forbids the proprietor of a barroom to "permit" a woman to work in the barroom does not except or exempt the proprietor's wife, or take into consideration any personal or proprietary interest that she might have in the business. The recent emancipation laws, which have relieved married women of nearly all of the incapacities which used to hamper and embarrass them, have not yet gone so far as to take away the authority of the husbands as head and master of the matrimonial community. A married man engaged in the retail liquor business bears the responsibility—because he has the authority—to see that his wife is not "permitted" to work in the barroom, in violation of a law which forbids him to permit a woman to work in his barroom.

The conviction and sentence in each case is affirmed.