95 So.2d 281

**CITY OF LAFAYETTE**

v.

**Wilfred ELIAS.**

No. 43340.

April 1, 1957.

Dissenting Opinion April 25, 1957.

Rehearing Denied May 6, 1957.

Albert M. Karre, Lafayette, for appellant.

· J. Minos Simon, Lafayette, Gravel, Humphries, Sheffield & Mansour, Alexandria, for defendant-respondent.

HAMLIN, Justice ad hoc.

In the exercise of our supervisory control (Article VII, Sec. 10, Louisiana Constitution of 1921, LSA), we granted writs to review a judgment of the City Court of the City of Lafayette, which quashed an affidavit charging the defendant with violating Ordinance 316 of the City of Lafayette, in that he sold a beverage of a low alcoholic content to a minor.

The facts of record show that the defendant, operator of Blue's Bar, was charged by two affidavits with violating Ordinance 316, Section 13, of the City of Lafayette, Louisiana, in that he opened his establishment and place of business on Sunday, September 2, 1956, and unlawfully sold therefrom seven cans of Jax Beer to a person under the age of twenty-one years · —a juvenile sixteen years of age.

The defendant filed a motion to quash the affidavits on the grounds that Ordinance No. 316 of the City of Lafayette was an attempted usurpation of a field of legislation already occupied by the State, and

that the enactment of said ordinance exercised a power superior to that of the State of Louisiana on the same subject matter, contrary to the law and Constitution of the State of Louisiana. Alternatively, the defendant averred that Ordinance 316, as applied to the present prosecution, had been legally and judicially overruled and repealed. Defendant then filed an amendment to the motion to quash, averring that the City of Lafayette, by the two prosecutions, was attempting to split up a crime and prosecute it in parts. He prayed that the City of Lafayette be ordered to elect which of the two crimes it intended to prosecute.

Ordinance No. 316, Section 13, of the City of Lafayette, reads:

"That it shall be unlawful for any dealer, manufacturer, wholesale dealer, jobber or retail dealer to sell any of said liquors or beverages to any person below the age of 21 years, or to sell any of said liquors or beverages between the hours of midnight of Saturday and midnight of the following Sunday."

The trial judge upheld the ordinance, insofar as it restrained the sale of liquor on Sunday—a violation of which was the subject matter of one affidavit—but he quashed the affidavit which charged the defendant with having sold seven cans of Jax Beer to a minor. He held that in forbidding the sale of liquors or beverages

to a person under twenty-one years of age, the ordinance contravened the limitation of LSA–Revised Statutes 26:285, which provides:

"No person holding a retail dealer's permit and no servant, agent, or employee of the permittee shall do any of the following acts upon the licensed premises:

"(1) Sell or serve beverages of low alcoholic content to any person under the age of eighteen years."

The City of Lafayette reserved a bill of exceptions to the ruling of the trial judge.

The only question presented for our determination is—Can a municipality validly enact a penal ordinance prohibiting the sale of beverages of a low alcoholic content to all persons under the age of twenty-one years, when the State law forbids such sales only to persons under the age of eighteen years?

The Charter provisions of the City of Lafayette, Act 310 of 1914, Sec. 4, amended by Act 52 of 1936, recite:

"That the Board of Trustees * * * shall have full power to adopt all ordinances that may be deemed proper:

"a. To regulate and preserve the *peace and good order* of the city, to exercise the *police power,* and to provide and maintain its cleanliness and sanitary condition.

* * * * * * * * *

"j. To regulate and prescribe limits for tippling shops, saloons, barrel houses, dram shops, and gambling houses." (Italics ours.)

The grant of police power to the City of Lafayette in its charter is very broad. Its governing authorities are delegated the right to regulate and prescribe limits for tippling shops and saloons without any qualification or limitation.[1] Our organic law has recognized that the business of selling intoxicating liquors is a lawful calling, but, because of its attendant evils, it has seen fit to delegate to municipalities wide powers for its regulation. State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 67 L.R.A. 70. In the very recent case of City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239, 241, this Court stated:

"The proposition is generally accepted that there is no inherent right in a citizen to sell intoxicating liquor, and the business may be permitted under conditions such as will limit to the utmost the evils associated therewith. It is recognized that municipalities have authority, under the police power generally delegated to them by the Legislature, to enact ordinances for

the regulation of the retail liquor business to the extent necessary for the protection of the public health, morals, safety and peace. State v. Gardner, 198 La. 861, 5 So.2d 132; City of DeRidder v. Mangano, 186 La. 129, 171 So. 826; * * *" See, City of New Orleans v. Smythe, 116 La. 685, 41 So. 33, 6 L.R.A.,N.S., 722.

In LSA–Revised Statutes 26:494, we find:

"Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3, this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. However, no parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit

---

1. In City of Lafayette v. Deep, 160 La. 5, 106 So. 654, 655, this Court stated: "Moreover, there was no necessity for special and particular legislative grant to enable the city to pass the ordinances

in question, since it had the authority under its inherent police power to suppress the sale of intoxicating liquors within its limits. * * *"

suspended or revoked in the manner provided by law for the suspension or revocation of permits."

We have held that a municipality cannot, by ordinance, permit what a statute forbids or forbid what a statute expressly permits. State ex rel. Sutton v. Caldwell, 195 La. 507, 518, 197 So. 214; City of Baton Rouge v. Rebowe, supra; City of Lafayette v. Deep, 160 La. 5, 106 So. 654. However, in State ex rel. Sutton v. Caldwell, supra, we also held:

"* * * a municipality with subordinate authority to legislate on the subject may make such new and additional regulations in furtherance of the purpose of the state law as may seem fit and appropriate to the necessities of the locality and be not in themselves unreasonable. * * *" [195 La. 507, 197 So. 218.]

The City of Lafayette contends that the judgment of the City Court of Lafayette, as rendered, constitutes a limitation upon the regulatory authority of municipalities acting pursuant to the authority delegated to them by the Legislature of the State of Louisiana; and, that if this interpretation is to be accepted as a correct one reflecting the true intent of the legislative will, it would, in effect, render every municipality helpless and impotent to enact ordinances for the general welfare of its people.

The City of Lafayette further avers that if a municipality has within its power the right to regulate the time at which such places may operate, the location of such establishments, and the age of persons that may be employed therein, *it logically follows that a municipality may regulate the age of persons to whom intoxicating beverages may be sold*—where such ordinance has for its purpose the protection of the public health, morals, safety, peace, and good order of the community. It relies on the cases of City of Baton Rouge v. Rebowe, supra; City of Lafayette v. Deep, supra; City of De Ridder v. Mangano, 186 La. 129, 171 So. 826;[2] and Corporation of Minden v. Silverstein & Dittmer, 36 La. Ann. 912.[3]

2. There the Supreme Court upheld the validity of an ordinance making it unlawful for the proprietor of a barroom to employ or permit a woman or girl to work in the barroom.

3. The syllabus of this case correctly states: "A legislative grant to a municipal corporation to 'pass all such ordinances, rules and regulations as they may deem necessary for the police and government of the said town,' and 'to have exclusive control of the license and sale of spirituous or intoxicating liquors,' implies as a necessary incident thereto the power to pass and enforce an ordinance to prohibit the sale of liquors within corporate limits on Sunday, as a police regulation. The exercise of such power is not amenable to the constitutional inhibition against the establishment of any religion by law, or to any other constitutional limitation to legislation."

The City of Lafayette has an institution of higher learning, Southwestern Louisiana Institute, within its geographical limits. Thousands of boys and girls from within and without the State are attracted to this institution each year, in quest of knowledge to prepare them for their life's work. When these students are sent so Southwestern Louisiana Institute there becomes imposed upon the City of Lafayette a duty not only to the students but to their parents. The majority of young men and women presently enrolled at this institution are below the age of twenty-one years. They arrive free from the influence of their families and churches, and their decisions become their own. They are suddenly thrown together, with naturally different dispositions and characters, and there is incumbent upon the City of Lafayette the duty to see that they are not exposed to anything that will affect their health, morals, safety, peace, or good order.

It has been repeatedly held that there are evils connected with the sale of liquor. City of Baton Rouge v. Rebowe, supra; City of De Ridder v. Mangano, supra; City of New Orleans v. Smythe, supra; State ex rel. Galle v. City of New Orleans, supra.

We find that Ordinance 316, Sec. 13, of the City of Lafayette, is a regulation appropriate to the necessities of the locality and that it is not in itself unreasonable. State v. Morton, 182 La. 887, 162 So. 718;

State ex rel. Sutton v. Caldwell, supra. In view of the provisions of the Charter of the City of Lafayette, hereinafore discussed, reason dictates and justice demands this finding in the instant case and under these circumstances, in order that the public health, morals, safety, peace, and good order of the students at Southwestern Louisiana Institute and of the City of Lafayette shall be insured.

For the reasons assigned, the judgment of the trial court quashing the affidavit filed against the defendant, Wilfred Elias, is reversed and set aside, and it is now ordered that the cause be remanded for trial.

SIMON, Justice (dissenting).

The question here presented for determination is whether a municipality can validly enact a penal ordinance *prohibiting* the sale of beverages of a low-alcoholic content, to wit, beer, to all persons under the age of 21 years, when the State law *permits* sale of such beverages to persons 18 years and over.

The City of Lafayette was incorporated by Act 310 of 1914, as amended by Act 52 of 1936. The charter specially empowers the governing board of trustees to adopt all ordinances that may be deemed proper to regulate and preserve the peace and good order of the City, to suppress nuisances, maintain its cleanliness and sanitary condition, and to exercise all legislative police powers pertaining to the government of the

City. It also specially authorizes the board of trustees to regulate and prescribe limits for tippling shops, saloons, barrel-houses, dram shops, and gambling houses.

Acting under the powers thus granted, the board of trustees adopted Ordinance No. 316, Section 13 thereof reading:

"That it shall be unlawful for any dealer, manufacturer, wholesale dealer, jobber or retail dealer to sell any of said liquors or beverages to any person below the age of 21 years, or to sell any of said liquors or beverages between the hours of midnight of Saturday and midnight of the following Sunday."

In the recent case of State v. Viator, 229 La. 882, 87 So.2d 115, 116, the defendants therein were criminally charged with having sold and delivered "intoxicating and spirituous liquors, to-wit: beer to * * * a person 18 years of age, * * *" in violation of LSA-R.S. 14:91, the pertinent prohibition under which a conviction was obtained reads: " * * * the selling, or otherwise delivering for value by anyone over the age of seventeen of any intoxicating or spirituous liquors, * * * to any person under the age of twenty-one * * *."

On appeal we reviewed and analyzed the several definitions of various types of alcoholic beverages employed by the Legislature in LSA-R.S. 26:241, and we concluded that the said statute having defined "beer" as a "malt beverage" of low alcoholic content, including ale, stout, porter, and the like, did not designate beer as a "liquor." Liquor is defined to be "all distilled or rectified alcoholic spirits, brandy, whiskey, rum, gin, and all similar distilled alcoholic beverages, including all dilutions and mixtures of one or more of the foregoing, such as liquors, cordials, and similar compounds."

By no construction, translation or interpretation did we hold, expressly or impliedly, that beer was not an intoxicating beverage. To so interpret our opinion would constitute a distortion and misinterpretation thereof. We resolved the sole and only question presented by holding that beer was a "malt beverage" and not a "spirituous liquor" as clearly defined in LSA-R.S. 26:241, and that the prohibition against the sale of liquors denounced by LSA-R.S. 14:91, under which the prosecution was conducted, did not include a prohibition against the sale of beer, a malt beverage, to a person 18 years of age or over. Thus, we concluded that beer, not being a liquor as defined in LSA-R.S. 26:-241, the sale thereof to a person 18 years of age and over, having been sanctioned and declared lawful by LSA-R.S. 26:285, was not an offense in violation of LSA-R.S. 14:91. Necessarily, had the sale of beer been made to a person under the age of 18 years, the penalties prescribed under LSA-R.S. 14:91 would be applicable.

If there was ever any doubt or uncertainty as to the intent of the Legislature in defining beer as contra-distinguished from liquors the seeming confusion was definitely, concisely and precisely set at rest by the enactment of Act 123 of 1956, LSA–R.S. 26:241, Sec. 5, which provides:

" 'Malt beverages' means beverages obtained by alcoholic fermentation of an infusion, or concoction, of barley or other grain, malt, and hops in water, including, among other things, ale, beer, stout, porter and the like. Malt beverages are exclusive of all 'liquors' whether they be defined as intoxicating or spirituous liquors, or as alcoholic, vinous, or malt liquors, or however otherwise defined as liquors."

It seems deliberately significant that at its 1956 session the Legislature also amended and reenacted LSA–R.S. 14:98 by Act 122 of 1956 so as to delete from the original context the words "while under the influence of intoxicating liquors * * *" to insert in lieu thereof the words "under the influence of alcoholic beverages * * *." Obviously the amending statute had the single purpose of denouncing as a crime the operation of a motor vehicle, et cetera, while under the influence of any alcoholic beverage, including beverages of low alcoholic content, such as beer, ale, porter, et cetera. Without said amendment and reenactment strong dissension would have been raised as to whether a person who had consumed beer to the extent of adversely influencing his normal mental and physical process would have become amenable to the crime originally denounced. There is no doubt now that one who operates a motor vehicle, et cetera, while under the influence of any alcoholic beverage shall be held amenable to the law.

It is a basic principle of law that the control and regulation of the traffic of liquor is an inherent police power of the State which can never be abridged or surrendered. La.Const.1921, Art. 19, Sec. 18, LSA. However, it is within the province of the Legislature to delegate this power to political subdivisions of the State. This is not deemed a surrender of the powers of the State for the Legislature can thereafter at any moment change, alter, or recall the power so delegated. Hence, under LSA–R.S. 26:494 the State delegated powers to its various subdivisions and thus authorized the adoption of local regulatory ordinances in respect to alcoholic beverages, providing as follows:

"Except as limited by the provisions of this Chapter the various subdivisions of the state *may regulate but not prohibit* except by referendum vote as provided by Chapter 3, this Title, or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. However, no parish or municipality shall, in the *exercise of its police power, regulate* the business of selling such beverages more than is necessary

for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits."

Notwithstanding the fact that the business of selling alcoholic beverages is a lawful one, it is subject to control and regulation by the State, by virtue of its constitutional police power, and by the political subdivisions of the State, by virtue of the power delegated by the Legislature.

In the instant case, the powers granted to the City of Lafayette under its charter in respect to the business of alcoholic beverages is *to regulate* and prescribe limits for tippling shops, saloons, barrel houses, et cetera. Nowhere in this specific grant of authority is there power to prohibit said business in any of its aspects.

The City of Lafayette unquestionably is granted the power of regulation. It has not been granted the power of prohibition, save and except under our local option laws and this only by an affirmative expression of the electorate. Manifestly, having only the power of regulation, the municipality can neither be heard to say that it has power of prohibition by implication nor can it effect prohibition under the appearance of regulation, especially when the attempted prohibition is squarely in conflict and inconsistent with State law.

I have examined a large number of cases dealing with the vexed question of when a local ordinance must be held to be inconsistent with and repugnant to the general laws of the State or held to be valid enactments necessary to protect the general welfare.

Generally speaking, the laws of the State operate within the corporate limits of every municipality. An ordinance must not be repugnant to, but in harmony with, the general policy and laws of the State and cannot authorize what a statute forbids, or forbid what a statute expressly permits.

On the other hand, a municipality, when expressly authorized by the Legislature to exercise a designated portion of its police power, has the right to enact ordinances for the regulation of businesses dealing with alcoholic beverages, provided the regulations are consistent with the constitution and laws of the State. City of De Ridder v. Mangano, 186 La. 129, 171 So. 826.

In the early case of State of Louisiana v. Burns, 45 La.Ann. 34, 11 So. 878, the City of New Orleans, under the provisions of its charter granting it the power to regulate and preserve the public peace and good order, enacted an ordinance intended to punish idle persons, prescribing therein the conditions which would constitute idleness.

Observing that the State had enacted a general statute dealing with idle persons, we held that, though the City had the power to punish idle persons or vagrants, it must be exercised under the general law of the State on this subject matter; and·that the City, not being exempt from the effects of the general law could not enlarge upon it. The ordinance, being inconsistent and in conflict with said general law, was therefore declared to be illegal, null and void.

In the instant case the majority opinion cites and relies upon the City of Lafayette v. Deep, 160 La. 5, 106 So. 654, 655, in support of its holding that the City of Lafayette may regulate the age of persons to whom intoxicating beverages may be sold under the general welfare clause of its charter. However, I find that that case fully supports the views I here respectfully submit.

In the Deep case, supra, the municipality enacted an ordinance, comparable in all respects, except as to penalties, to the Hood Act (Act 39 of 1921, Ex.Sess.), prohibiting the selling of intoxicating beverages within its limits. At the time the ordinance was adopted the sale of intoxicants for beverage purposes, except as specially permitted, was prohibited not only in this State but nationwide. We accordingly upheld the ordinance as being well within the exercise of power by the City under its charter in regard to the welfare of its inhabitants and held that the power

thus exercised was not abrogated or curtailed by the Hood Act.

We further observed that since the State and the nation had prohibited the sale of intoxicants, the municipalities, in the exercise of their police power could likewise prohibit. Moreover, the Hood Act did not, directly or indirectly, withhold the right thus exercised by the City.

In disposing of the issues in the Deep case we significantly said [160 La. 5, 106 So. 655]: "The reason the city of Lafayette *could not* declare the sale of liquors a nuisance and pass ordinances to *suppress it* prior to the Eighteenth Amendment [U.S. Constitution] and the laws enacted pursuant thereto, was because of the fact as already stated, that the state *permitted such sale and the city could not prohibit that which the state licensed and permitted*, except in the manner pointed out by the statutes—on a vote of the electors." (Italics mine.)

In the case of City of Shreveport v. Brister, 194 La. 615, 194 So. 566, the City adopted an ordinance, known as the "Parking Meter Ordinance," imposing a fee for the privilege of parking automobiles on the city streets. The State had previously enacted Act 10 of 1934, 1st Ex.Sess., providing that no municipality could impose, levy or collect any tax, license, or excise, of any character whatsoever, upon any property, business vocation, occupation, profession,

or upon the exercise of any right or privilege, or upon the performance of any act whatsoever, not taxed by the State. It was conceded that the City was acting under its implied police powers as affecting the regulation of traffic within its limits. After observing the right of the Legislature under its police power to enact general laws limiting and restricting the police powers exercised by municipalities, we held that, the legislature having prohibited municipalities from imposing a tax or license on that which was not taxed by the State, the ordinance imposing such a tax was therefore ultra vires.

I readily recognize that under the power of regulation a municipality is authorized to exercise said power to regulate the time when such places engaged in the business of selling alcoholic beverages may operate, such as our Sunday Law and election days. Such ordinances have met with the approval of the courts for the obvious and logical reason that such enactments supplemented our general law, or covered a part of an authorized field on a subject matter not covered by general laws, furthered the purpose of the general law.

In State ex rel. Sutton v. Caldwell, 195 La. 507, 197 So. 214, 217, the City of Shreveport enacted an ordinance having for its purpose the promotion of the efficiency of its Fire Department personnel. In the light of Act 61 of 1920, LSA–R.S. 33:1961 et seq., affecting all fire departments in cities having a population in excess of 10,000 or more inhabitants, except New Orleans, we observed that:

"* * * there is nothing in the ordinance *opposed* to the provisions of the statute. The only reasonable interpretation of the statute is that it prescribes minimum requirements for promoting the efficiency of fire departments. The State is not concerned otherwise in the matter of regulating the operation of any city's fire department. A municipality cannot permit by ordinance what a statute forbids, or forbid what a statute expressly permits, but it may supplement a statute or cover any part of an authorized field of local legislation that is not covered by State legislation. Power v. Nordstrom, 150 Minn. 228, 184 N.W. 967, 18 A.L.R. 733, 738. When the legislature has assumed to regulate a given course of conduct * * * a municipality with subordinate authority to legislate on the subject may make such new and additional regulations in furtherance of the purpose of the state law as may seem fit and appropriate to the necessities of the locality and be not in themselves unreasonable. Mann v. Scott, 180 Cal. 550, 182 P. 281."

In the case of City of Minden v. David Bros. Drug Co., 195 La. 791, 197 So. 505, 508, under the general welfare clause of its charter, the City adopted an ordinance regulating the practice of prescribing intoxicating liquors as medicines by physi-

cians and the sale thereof by registered pharmacists. The City had availed itself of the local option law and accordingly adopted an ordinance prohibiting the sale of intoxicating liquor for medicinal purposes without, aside from other regulations, obtaining a permit from the City. The ordinance was enacted in spite of the fact that a State statute authorized the sale, in dry territory, of intoxicating liquor for medicinal purposes by druggists or pharmacists. The defendant drug company was criminally charged by the City with selling intoxicating liquor as medicine without first having obtained a permit from the City. We declared that the only right granted the City under the general welfare clause insofar as intoxicating liquor was concerned, was the right to regulate its sale for beverage purposes, subject to the restrictions imposed thereon by State and Federal laws; and in holding the ordinance illegal and of no effect, we said:

"It is fundamental that a municipality can not adopt ordinances which infringe the spirit of state law, or are repugnant to the general policy of the State. It is also fundamental that a statute granting a municipality the right to exercise a designated portion of the police power must be strictly construed, and any fair and reasonable doubt of the existence of the power must be resolved against the municipality."

In the case of City of Baton Rouge v. Rebowe, consolidated with City of Baton Rouge v. Messina, 226 La. 186, 75 So.2d 239, 241, an ordinance prohibited the sale of certain alcoholic beverages between the hours of 1:00 A.M. and 6:00 A.M. weekdays, and between midnight Saturday and 6:00 A.M. Mondays following. Licensed establishments were ordered to be closed and remain closed continuously between 2:00 A.M. and 6:00 A.M. on weekdays and between midnight Saturdays and 6:00 A.M. Mondays following, but the permittee and his employees were allowed to remain within the licensed premises for one hour after midnight Saturdays for cleaning purposes. The word "closed" was defined to mean the building locked, all lights extinguished and no person inside the premises. The defendants charged with violation of said ordinance contended that the term "closed" as used therein was in apparent conflict with the like term as used in the State Sunday closing law, LSA–R.S. 51:191.

With Chief Justice Fournet as author in the case of City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239, we again recognized the authority of municipalities, under the police power generally delegated to them, to enact ordinances for the regulation of the liquor business to the extent necessary for the protection of the public health, morals, safety and peace. We also observed that under LSA–R.S. 26:494 the City of Baton Rouge, by the terms of its charter, was specially delegated the au-

thority. " * * * to close * * * places for the sale of intoxicating liquors when the public safety may require it." We accordingly held that since the City had been specifically delegated the authority to "close" such places as public safety required, and that since the provisions of the ordinance in question were *not in direct conflict with the provisions of any State law upon the same subject matter,* (citing the Caldwell case, supra) the City had full authority to supplement the State statute and to make such regulations as would be in *furtherance of the purpose of the State law.*

Confronted with these legal principles I believe that there exists a conflict between the city ordinance and the general law of the State necessitating that the ordinance fall, yielding to the paramount law of the State.

On the subject matter of alcoholic beverages, the Legislature has recognized and sanctioned the sale of beverages of low alcoholic content to any person 18 years of age or over. LSA–R.S. 26:285. Ale, beer, stout, porter and the like are defined as malt beverages of low alcoholic content, containing not more than six percent alcohol by volume. LSA–R.S. 26:241, as amended by Act 123 of 1956. In the Viator case, supra, we recognized and held that beer is not a "spirituous liquor" as defined by LSA–R.S. 26:241 and that the sale thereof to persons 18 years of age and over was not an offense chargeable under and violative of LSA–R.S. 14:91, which prohibited the sale of liquors to minors.

Hence, as opposed to our State law and jurisprudence, the ordinance of the City of Lafayette prohibits the sale of all alcoholic beverages to persons under the age of 21 years. The municipality has declared unlawful that which the State and this Court have declared to be lawful. The ordinance prohibits that which is affirmatively authorized by state law insofar as beer and other beverages of low alcoholic content is concerned. It follows that a municipality cannot effect prohibition under the appearance or guise of regulation, for the power to regulate is not the power to prohibit and it must be further conceded that the power to suppress or prohibit is not the power to license or regulate.

I am in full accord with the laudable and well-intentioned purposes which prompted the City of Lafayette in enacting the ordinance in question. But the mere fact that it has such a commendable purpose in seeking to promote the peace, good order, morals and health of the community is not sufficient in itself to sustain its validity.

I respectfully submit that the ordinance insofar as it seeks to prohibit that which our law sanctions and permits is ultra vires and should be declared illegal and of no effect.

I respectfully dissent.