400 So.2d 1188 (1981)
BROUSSEAU'S, INC., d/b/a Brousseau's Seafood
v.
CITY OF BATON ROUGE.
No. 14110.
Court of Appeal of Louisiana, First Circuit.
April 13, 1981.
H. Matthew Chambers, Baton Rouge, for plaintiff-appellee Brousseau's, Inc. d/b/a Brousseau's Seafood.
*1189 Walter G. Monsour, Jr., Parish Atty., James J. Zito, Asst. Parish Atty., Baton Rouge, for defendant-appellant City of Baton Rouge.
Winston R. Day, Baton Rouge, for defendant/intervenor-appellant University Acres Civic Association, through Ms. Mary Jane Rupp, President.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The basic issue presented is whether or not appellee Brousseau's, Inc. (hereinafter Brousseau's) is entitled to a Class "A" beer, wine and liquor permit. Raised by this issue are the questions of whether or not appellant, City of Baton Rouge, can deny the permit on the basis of evidence showing a detrimental effect on the public health, safety and morals; and, whether or not the evidence in this case does in fact establish such a detrimental effect. We agree with the trial court's judgment granting Brousseau's the right to apply for the permit, although our conclusion is based on different reasons.
This litigation arose from the following facts. Appellee Brousseau's filed a notice of intent to apply for a Class "A" permit to sell beer, wine and liquor at its proposed restaurant. The restaurant was to be located on Highland Road, near its intersection with Lee Drive in Baton Rouge. Brousseau's followed the required steps, including the posting of a notice of intent on the door of the building. Four hundred seventy-five residents of a nearby neighborhood, University Acres, signed a petition protesting the granting of the license and presented the petition to the Alcohol Beverage Control Board (hereinafter ABC Board). After considering the matter the ABC Board refused to allow appellee to apply for the permit. At trial Francis Fitch, Chairman of the ABC Board, admitted the right to apply was denied mainly because of the residents' complaints.
Brousseau's appealed to the City Council and after a hearing was held the Council granted Brousseau's the right to apply for a license to sell beer and wine, but not liquor. The Council cited as authority a local ordinance found in the Baton Rouge City Code, Title 9: § 4(a) which allows the Council to deny a permit "on grounds which might adversely affect the public health, safety and morals."
Brousseau's appealed to the Nineteenth Judicial District Court and a trial on the merits was held. The University Acres Civic Association intervened in the matter on behalf of the City. At trial, the court refused to allow any evidence of the possible effect on the health, safety and morals of the community. It stated the qualifications for obtaining a liquor license were prescribed by Chapter 1 of La.R.S. Title 26, (La.R.S. 26:1-219) and that Chapter 1 did not provide a license could be denied simply because of a possible adverse effect on the health, safety and morals of the community. In essence, the court found the local ordinance was not in compliance with La.R.S. 26:1-219 and therefore was invalid. Evidence on the possible adverse effects on the welfare of the community was offered on proffer only.
After hearing testimony on other matters the court ruled there had been no evidence showing Brousseau's did not meet the requirements of La.R.S. 26:1-219, therefore the liquor license should be granted. The City and the intervenor appealed.[1]
Appellants urge the court erred in ruling evidence relative to the welfare of the community was irrelevant to the proceedings. They argue the court overlooked a specific statutory grant of authority for a municipality to regulate alcohol to preserve the welfare of the community, La.R.S. 26:494. The statute reads as follows:
"Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided *1190 by Chapter 3, this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. However, no parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits." (Emphasis added.)
Further, appellants argue that adoption of the local ordinance was permitted under the broad authority of La.R.S. 26:495 which reads as follows:
"No person shall sell any beverages of high alcoholic content in violation of any lawful ordinance or regulation adopted by authority of this Part by any parish or municipality."
Appellee argues this statute, found in Chapter 2 of Title 26, has no bearing on the instant case. He cites R.S. 26:84 which reads as follows:
"The board with respect to state permits and municipal authorities and parish governing authorities with respect to local permits may withhold the issuance of permits in the manner and under the terms and conditions specified in this Chapter." (Emphasis added.)
Section 84 is found in Chapter 1 of Title 26 and therefore indicates that only Chapter 1 is applicable to the granting of local permits. Since there was no contention that Brousseau's had failed to meet any of the requirements of Chapter 1, appellee contends the trial court was correct in ruling in Brousseau's favor.
After carefully examining the applicable law and the jurisprudence interpreting it, we cannot say Section 494 has no application to this case, simply because it is found in Chapter 2 of Title 26. Granted, the arrangement of Title 26 is somewhat confusing. Chapter 1 deals primarily with liquor and wine[2] and Chapter 2 deals mainly with beer. However, Chapter 2 is divided into seven parts. While Part Two deals only with beverages of low alcoholic content, other parts, including Part Six (in which Section 494 is found) deal with beverages of both high and low alcoholic content. (See Comment following Section 494.) The statute refers clearly to municipalities having the right to regulate the selling of alcoholic beverages. We find no authority for ignoring Section 494 simply because it is not found in Chapter 1.
Section 494 has been cited several times for the proposition that a municipality may enact stricter alcoholic beverage regulations than is provided under state law. In City of Lafayette v. Elias, 232 La. 700, 95 So.2d 281 (1957), rehearing denied 1957, the court held that a municipality could enforce a local ordinance which prohibited the selling of beer to those under age twenty-one even though state law allowed the sale of beer to persons eighteen or over. The court cited Section 494 and noted that the municipality could regulate in accordance with the needs of the community. In City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954), rehearing denied 1954, the court upheld the validity of a city ordinance defining "closing hours" differently than state law. The court cited Section 494, as authority for the municipality to enact such ordinances dealing with alcoholic beverages if necessary for the protection of the public welfare.
In Lanaux v. Com'n on Alcoholic Bev. Control, 342 So.2d 265 (La.App. 4th Cir. 1977), writ refused 1977, the court held that Section 494 did not apply to the statutes found in Chapter 1 of Title 26. Therefore, the court rejected the plaintiff's arguments that under Section 494 the municipalities were limited by the specific regulations of *1191 Chapter 1 and held that there was "no statutory provision prohibiting a municipality or subdivision of the State from enacting ordinances which may include additional restrictive provisions not inconsistent with the intent of the legislative act."
These cases indicate clearly that appellant is correct in arguing that Section 494 grants municipalities authority to enact statutes such as Title 9, Section 4(a) of the Baton Rouge City Code if such ordinances are necessary for the protection of the welfare of the community and even if such ordinances go beyond the provisions found in Chapter 1 of Title 26 or in other state laws. We therefore disagree with the trial court's ruling that all evidence as to the possible effect on the welfare of the community was irrelevant. The evidence should have been admitted.
After carefully examining the proffered evidence, we reach the same ultimate conclusion as the trial court. Appellee is entitled to his liquor permit. The evidence proffered to establish the possible adverse effects on the welfare of the community fails to establish that these effects are likely to occur.
The proffered evidence consisted of testimony by Mr. Fitch, R. Robert Rackley, and Ralph W. Stephenson, Jr. Mr. Fitch related the various complaints and fears of the residents. He reported they feared increased traffic congestion, more frequent accidents due to an increased number of intoxicated drivers, increased litter and increased vandalism. However, there was no evidence to support these apprehensions. Mr. Rackley and Mr. Stephenson, residents of the area, testified traffic congestion was the main concern of the people. While this is certainly a legitimate interest, and it is probable a restaurant in this area would minimally increase the traffic flow, there was not one iota of evidence to show Brousseau's business would increase appreciably simply because he was granted a permit to sell liquor. In other words, the increase in traffic would undoubtedly occur as a result of the opening of a new restaurant, whether that restaurant was serving liquor or not. The proffered testimony failed to establish any connexity between the speculated effects and the granting of the liquor license (in addition to the beer license already approved).
Evidence admitted at trial showed the proposed site of the restaurant is surrounded by commercial property. Terrence Brousseau, owner of the proposed restaurant, testified the site is surrounded by a service station, a water tower, a convenience store, a bank and a gift shop. There is no residential property contiguous to the proposed site. The restaurant is designed to seat about sixty people and the parking lot is built to accommodate thirty-six cars. There is additional space for parking cars behind the building. Much time was spent at trial in questioning Mr. Brousseau about certain activities at The Caterie, a bar and restaurant partially owned by Mr. Brousseau. As appellee's counsel pointed out, this evidence had no relevance to the issue at hand. The Caterie is an establishment serving meals with an average price of $3.00 and contains a separate bar designed for consumption of alcoholic beverages. To the contrary, Brousseau's is a restaurant serving meals with an average price of $5.00 to $6.00 and the bar area contemplated is designed primarily for the consumption of oysters. Because of these differences we find any comparison of Brousseau's to The Caterie to be irrelevant.
In conclusion we hold that appellants, as opponents to the application for the liquor permit, have failed to show any adverse effects will result from the granting of the permit. The crux of the opposition seems to be a misunderstanding that Brousseau's will be a bar rather than a restaurant. For the foregoing reasons, we affirm the judgment of the trial court. Appellant, City of Baton Rouge, is cast for all costs, limited to those applicable by law.
AFFIRMED.
NOTES
[1] The appeal raises the issue of the propriety of the liquor permit only. Brousseau's right to obtain a permit to sell beer and wine is not at issue.
[2] "Alcoholic beverages" is defined in Chapter 1 (La.R.S. 26:2[1]) as any fluid having an alcoholic content of more than six per cent by volume. Chapter 2 (La.R.S. 26:241[1]) defines the same as any fluid containing more than one-half of one per cent alcohol by volume.