434 So.2d 1266 (1983)
R. David PEEK
v.
ALCOHOL BEVERAGE CONTROL BOARD, City of Baton Rouge, Parish of East Baton Rouge.
No. 83 CA 0049.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
*1267 MaCallynn J. Achee, Baton Rouge, for plaintiff-appellant R. David Peek.
William Lowrey, Baton Rouge, for defendant-appellee Alcohol Beverage Control Bd., et al.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
In August of 1982, R. David Peek (appellant) applied to the Baton Rouge Alcohol Beverage Control Board (ABC Board) for a Class "B" beer and liquor license, in order to operate a drive-in window business which would dispense frozen daiquiris and other frozen beverages of alcoholic content to motorist-customers. A hearing was held on September 14, 1982, before the ABC Board. The Board denied the application due to the intent and scope of appellant's proposed business operation. Appellant appealed to the Nineteenth Judicial District Court, which affirmed the ABC Board's determination. From that judgment, appellant perfected this devolutive appeal.
The central issue in this appeal is whether the ABC Board improperly denied appellant's application for a Class "B" license due to his intended mode of operation in dispensing alcoholic beverages.
The Twenty-First Amendment to the United States Constitution gives broad, sweeping power to state governments to regulate and control the sale of intoxicating beverages. This power is something more than normal state authority over public health, welfare, and morals, and is almost exclusive and unlimited. 48 C.J.S. § 24b (1981). There is no inherent right to sell intoxicating liquor, and the state, under its police power, may regulate and control the sale of alcoholic beverages so as to limit to *1268 the utmost the evils associated therewith. City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954); State v. Morton, 182 La. 887, 162 So. 718 (1935); and Thibodeaux v. City of Sulphur, 140 So.2d 49 (La. App. 3rd Cir. 1962).
The state may enact laws regulating the traffic of intoxicating beverages, it may prohibit altogether such traffic, either statewide or in certain localities, or it may prohibit the sale of liquor to certain persons, at certain places, or on certain days. City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309 (1935). The state may also regulate the quantities in which liquor may be sold, the containers, signs and advertising, the displaying of a license in a dealer's premises, and the screening or curtaining of premises. 48 C.J.S. § 41 (1981).
Such regulatory laws must be for a reasonable purpose. Nomey v. Jackson Parish Police Jury, 343 So.2d 315 (La.App. 2nd Cir.1977). There must be a real and substantial relationship between the regulations imposed and the prevention of injury to the moral, social or economic welfare of the public. Regulations must be enacted pursuant to a legitimate exercise of the police power, including a respect for constitutional guarantees. Reynolds v. Louisiana Board of Alcoholic Bev. Con., 248 La. 639, 181 So.2d 377 (1965).
The state may delegate its regulatory authority over intoxicating beverages to its municipalities or political subdivisions. State v. Sissons, 292 So.2d 523 (La.1974); City of Lafayette v. Elias, 232 La. 700, 95 So.2d 281 (1957); Lanaux v. Com'n on Alcoholic Bev. Control, 342 So.2d 265 (La.App. 4th Cir.1977), writ refused, 344 So.2d 383 (La.1977). Municipalities may in turn enact ordinances regulating liquor traffic which are even more stringent than state regulations, if necessary to protect the public welfare. City of Lafayette v. Elias, supra; Brousseau's, Inc. v. City of Baton Rouge, 400 So.2d 1188 (La.App. 1st Cir.1981); Lanaux v. Com'n on Alcoholic Bev. Control, supra.
The state has granted the authority to issue liquor licenses in the City of Baton Rouge to the local ABC Board. La.R.S. 26:71, et seq. The Board's authority is defined in Baton Rouge City Code, Title 1, Chapter 2, Section 167, which provides in pertinent part:
"(a) The board of alcoholic beverage control, hereinafter referred to as the board, shall have the control and exclusive local jurisdiction for the regulation of all premises licensed or permitted under title 9, relative to wine, beer and liquor regulations. The board, as such, shall have the authority to do all acts necessary, useful and lawful to diligently discharge its duties, in the regulation of all premises and persons licensed under the provisions of title 9, chapter 1, part 1, entitled Wine, Beer and Liquor Ordinance for the City of Baton Rouge (hereinafter referred to as title 9), and to enforce the provisions under title 26 of the Louisiana Revised Statutes, as well as to enforce all rules and regulations which are promulgated by the board. The specific powers of the board include but are not limited to:
(1) The authority to issue, decline the issuance of, to revoke, or suspend all permits or licenses issued under this ordinance as it deems necessary subject only to compliance with specific provisions of this ordinance and subject only to review by the courts of the State of Louisiana as is hereafter provided."
Further, Section 169 provides certain causes for which a license may be denied, revoked, or suspended, and reads in pertinent part:
"In addition to any causes enumerated in title 9, the board shall have the authority to deny, revoke or suspend any permit or license or levy any fine for any one of the following causes or when any of the following conditions is found to occur:
. . . .
(j) Operation adverse to public health, safety or morals. If, based upon specific facts in the record which can reasonably be anticipated to have an adverse *1269 effect on the public health, safety or morals. By `public' is meant not just the immediate area surrounding the licensed premises to be licensed, but may also mean the city or Parish of East Baton Rouge as a whole."
Appellant admitted before the ABC Board that his intended operation involved a facility designed to allow motorists to drive through a designated area to purchase frozen alcoholic beverages without having to get out of their vehicles.[1] These frozen drinks would be prepared on the premises, pre-mixed in a machine, and dispensed in containers made of hard plastic with a heat-shrunk seal intended for one-time usage.[2]
The location of the proposed business is at the corner of Hollydale Drive and Perkins Road in Baton Rouge, right across Hollydale Drive from an establishment known as Bolton's Pharmacy. The municipal address is 3030 Perkins Road. There are various other commercial establishments on Perkins Road in this area; however, directly off Perkins Road there are several streets known as the "Dale" streets, comprising a sizeable neighborhood of single-family dwellings. From the first lots off Perkins Road to the L.S.U. lakes, the zoning is A-1 residential.
Evidence as to possible adverse effects on the health, safety and morals of the community is properly admissible in determining whether a license should be issued. Brousseau's v. City of Baton Rouge, supra. The Southside Civic Association, partly comprised of residents in this area, opposed the application for the license. Nearby residents voiced their concerns and fears that the opening of the proposed establishment would increase an already existing problem of traffic, and increase intoxicated driving and noise in the area. One resident commented that Hollydale Drive was already a "short-cut" for college students from L.S.U. to Perkins Road, and that since residing in this area, four or five motorists had run into his front yard. Residents also expressed concern because of the large number of children in the area, which does not have sidewalks. The Association pointed out that the surrounding area already contains five restaurants serving beer and liquor and four package liquor outlets.
Before denying the license, Board members discussed among themselves the propriety of granting the permit to appellant.[3] The members expressed concern that this type of business would encourage drinking while driving. Baton Rouge City Code, Title 13, Chapter 10, Section 608, provides:
"It shall be unlawful for any person to drink any alcoholic beverage of either high or low alcoholic content in or upon any public street, alley, sidewalk, right-of-way, park, playground, square or unenclosed public place in the City of Baton Rouge. However, the provisions of this section may be waived by the city council for good cause."
Allen West, Director of the Board, commented:
"but this thing contributes to the violations of various other City and Parish ordinances. The thing about drinking on public streets ... I think it would be naive to believe that people were not going to drink these things on public streets. It also contributes to violating Section 612 of the Parish Code, which reads `removal of open containers prohibited for the purposes of discourgaging (sic) public drinking. It shall be unlawful for any person to remove an open container with alcoholic beverages from any *1270 business, lounge or restaurant or establishment which is licensed under the provisions of Title 9.' So we are not only contributing to the public drinking act by granting the license based on what they said they were going to do ... not what somebody else said ... based on what their explanation of their business was. We are not only violating that one, but we are contributing to individual citizens violating an ordinance."
Both state law and local ordinance prohibit the sale of alcoholic beverages to any intoxicated person, or person exhibiting characteristics of intoxication.[4] A drive-through window operation certainly does not provide an operator with an environment conducive to reasonably ascertaining whether or not an individual is intoxicated, so as to guard against such sales. It does not provide the same opportunity as other outlets where the customer must physically enter the premises to purchase alcoholic beverages. The selling of alcoholic beverages to persons under eighteen years of age is a crime in this state by virtue of La.R.S. 14:91. Also, La.R.S. 26:88(1) provides that a licensee shall not sell alcoholic beverages to any person under 18 years of age, without proper identification. It is also a crime for persons under the age of eighteen to purchase alcoholic beverages. La.R.S. 14:91.1 and 91.2. Baton Rouge City Code, Title 13, Chapter 10, Sections 616-618 also makes such a purchase unlawful and even prohibits persons under the age of eighteen from entering an establishment where alcoholic beverages are the principle commodity sold. Again, examination of the identification of minors who are old enough to obtain a driver's license, but not yet at the required age to purchase alcoholic beverages, would not be under the close supervision provided in a walk-in establishment. The state and municipal "control" over the sale of intoxicating beverages is simply minimized in such a proposed operation.
Our review of this record reveals that the ABC Board did not abuse its discretion in denying appellant's application in light of the "intent and scope of their admitted operation." We are in accord with the Board's determination that such an operation would contribute to the already alarming and increasing problem of intoxicated driving in our state.[5] The Board's determination is supported by credible and sufficient evidence indicating that this type of establishment could adversely affect the public health, safety, welfare and morals. The broad authority to regulate the sale of intoxicating liquors delegated to the Board by the state certainly encompasses such a determination.
Accordingly, we affirm. All costs are taxed to appellant.
AFFIRMED.
NOTES
[1] Appellant also expressed to the Board his intention to sell beer and other "conventional" types of liquor during the winter months, when frozen drinks would be less appealing.
[2] We do not address the issue of whether these containers are "sealed" for purposes of the Open Container Law found in the Baton Rouge City Code, Title 13, Chapter 1, Section 1, and in Chapter 10, Sections 608-610, 612. We do not find this issue controlling as to our determination involving the correctness of the Board's decision.
[3] Because of the unique method of operation proposed, the record reveals that the Board had some difficulty clarifying the nature of this business (i.e., manufacturing versus retail sales) and the appropriate license classification for such an enterprise. There was also some debate as to the applicability of the Open Container Law, supra.
[4] La.R.S. 26:88(2) and Baton Rouge City Code, Title 9, Chapter 1, Section 7(a)(9).
[5] Acts of the Louisiana Legislature, 1982, No. 14, effective January 1, 1983, amending La.R.S. 14:98.