37 So.3d 406 (2010)
Roland TOUPS, Individually and on Behalf of Thrifty Liquor-15, Plaintiff-Appellant
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 44,933-CA.
Court of Appeal of Louisiana, Second Circuit.
February 10, 2010.
Opinion Granting Rehearing June 2, 2010.
*407 Ronald J. Miciotto, for Plaintiff-Appellant.
The Malone Law Firm, by Dannye Wayne Malone, Mary Ellen Winchell for Defendant-Appellee, City of Shreveport.
Lunn, Irion, Salley, Carlisle & Gardner, by James A. Mijalis W. Orie Hunter, III, Counsel for Intervenors-Appellants, Alex S. Mijalis, Mary C. Mijalis & Christopher Demopulos, Trustee of Christopher Trust & SSD Trust.
Before GASKINS, CARAWAY and LOLLEY, JJ.
GASKINS, J.
The plaintiff and the intervenors appeal from the trial court's affirmance of the Shreveport City Council's denial of a special exception use for the sale of alcohol to operate a package liquor, wine and beer store on Bert Kouns Industrial Loop in Shreveport. We affirm the trial court judgment denying the special exception use.

FACTS
The property at issue is undeveloped acreage located at 420 Bert Kouns Industrial Loop in Shreveport upon which Roland Toups is seeking to build a Thrifty Liquor store. The proposed store would sell package liquor of both low and high alcoholic content, including beer, wine, bourbon, scotch, whiskey and vodka; the facility would have a drive-thru window. The parcel of land is owned by Alex Mijalis; Mary C. Mijalis; and Christopher Demopulos, trustee of Christopher Trust and SSD Trust. It is located on the north side of Bert Kouns, approximately 600 feet west of Linwood Avenue.
The proposed liquor store site is near a Brookshire's grocery store, a Raceway gas station (which is sometimes called Racetrac in the record), and a Shell (formerly Texaco) gas station, all of which are allowed to sell alcohol in varying degrees of alcoholic content pursuant to special exception uses. The record shows that Brookshire's sells beer, wine and high alcohol content wine. Raceway apparently sells beer, wine coolers, and wine. Shell primarily sells beer; however, some testimony indicated that it may also sell wine and wine coolers.
Mr. Toups filed an application with the Shreveport Metropolitan Planning Commission (MPC) to effectuate a change in the existing zoning of the property from R-A (residence/agriculture districts) to B-3 (community business districts). Following a public hearing on November 7, 2007, the MPC approved the zoning change by a vote of four to three.
Additionally, Mr. Toups filed an application with the Zoning Board of Appeals (ZBA) to allow special exception use for the sale of high alcoholic content beverages. The application specifically requested special exception use for package liquor, package beer, and package wine and beer. The ZBA unanimously approved the application on November 14, 2007, by a vote of six to zero.
However, the MPC and ZBA decisions were appealed to the Shreveport City Council by Steve Angell, the pastor of operations of Calvary Baptist Church. Following a lengthy and well-attended public meeting on December 11, 2007, the city council voted to overturn both decisions.
Mr. Toups filed a petition in the district court for review of the city council's votes to reverse the MPC and ZBA decisions. The property owners filed a petition of intervention, joining with Mr. Toups in seeking reversal of the city council's actions. *408 The City of Shreveport answered, asserting that the city council's decisions to reverse the MPC and ZBA rulings were based on due consideration of the public health, safety and general welfare of the municipality.
A petition of intervention was filed by Calvary Baptist Church, Word of Faith Church International, and Christian Center of Shreveport. They asserted that they operated churches within close proximity to the property at issue and that they opposed the proposed rezoning of the area to allow the liquor store and granting of its application for special exception use.[1] However, their petition was subsequently dismissed pursuant to an exception of no right of action.
Trial and de novo review were held in the district court on November 25 and December 2, 2008. Testifying for the plaintiff and intervenors were Mr. Toups; Mr. Mijalis; Roy Jambor, the senior planner for the MPC; Charles Kirkland, the executive director of the MPC; Bernard Riley, a crime analyst for the Shreveport Police Department (SPD); Russell Collins, the SPD's approving official for liquor licenses; James Gosslee, a real estate broker; and Byron Tindell, the district traffic operations engineer for the Louisiana Department of Transportation and Development (DOTD). The witnesses presented by the city were Mr. Angell and David Martin, pastors associated with Calvary Baptist Church; Timothy Carscadden, the senior pastor of Christian Center of Shreveport; and Christine Carr, a resident of a subdivision located near the proposed liquor store site. The city also recalled Corporal Collins to obtain additional information about alcohol licenses.
On February 9, 2009, the trial court issued a written opinion in which it reversed the city council's decision denying the rezoning of the property from R-A to B-3, but affirmed the city council's decision denying the special exception use. On the rezoning issue, the trial court noted the trial testimony of Mr. Gosslee, the real estate broker, that most of the parcels fronting Bert Kouns Industrial Loop will be rezoned commercially from R-A to B-3, which is the highest and best use of the property; apparently many already have been rezoned. The court concluded that nonuniform zoning treatment and inconsistent use of police power, which were arbitrary and capricious and amounted to a violation of the owners' property rights, had been proven. Accordingly, the city council's rezoning decision was reversed.
As to the special exception use, however, the trial court found that the city council's decision was not arbitrary, capricious or unreasonable. The court observed that while Brookshire's, Racetrac and Shell had special exception uses to sell beer and wine, the proposed liquor store would sell such high alcohol package liquor as bourbon, vodka and rum. Furthermore, it would have a drive-thru service whereby a customer could buy a mixed drink with adhesive tape on the top and then reenter traffic near a church and a school. Like the city council, the court also made note of the "vehement" public citizen comments. The court found that the city council's decision to overturn the ZBA ruling was "articulably consistent with promoting health, safety, morals and for the general welfare of the community," pursuant to La. R.S. 33:4721 and its jurisprudence.
*409 Judgment in conformity with the trial court's written opinion was signed on March 6, 2009.
The plaintiff and the intervenors appeal.

LAW

Statutory
The Louisiana Supreme Court, in City of De Ridder v. Mangano, 186 La. 129, 171 So. 826 (1936), gave a historical perspective of state law prior to and after the Twenty-first Amendment to the United States Constitution:
Before the advent of national prohibition, the retail liquor business in Louisiana was regulated, in all of its details, by a statute, Act No. 176 of 1908, known as the Gay-Shattuck Law. After national prohibition was abolished, the Legislature, instead of enacting another such statute as the Gay-Shattuck Law, left it to each parish and municipality to adopt its own regulations of the retail liquor business, by ordinances on the subject.
As to local regulatory ordinances pertaining to alcoholic beverages, La. R.S. 26:493 provides:
Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.
"Alcoholic beverages" means any fluid or any solid capable of being converted into fluid, suitable for human consumption, and containing more than one-half of one percent alcohol by volume, including malt, vinous, spirituous, alcoholic or intoxicating liquors, beer, porter, ale, stout fruit juices, cider, or wine. La. R.S. 26:241(1). "Beverages of low alcoholic content" means alcoholic beverages containing not more than six percent alcohol by volume. La. R.S. 26:241(1)(a). "Beverages of high alcoholic content" means alcoholic beverages containing more than six percent alcohol by volume. La. R.S. 26:241(1)(b).[2]
Any use engaged in the sale and/or dispensing of alcoholic beverages of high or low alcoholic content is "a special exception use requiring the approval of the zoning board of appeals and subject to such terms and conditions as the board may specify to assure compatibility with existing or planned development and to protect adjacent or nearby property and uses." Shreveport Code of Ordinances Section 106-1127. The terms and conditions may specify such things as "frequency, duration, or hours of operation; additional screening, setbacks, parking, landscaping or other site improvements; alcoholic content; method or type of service (e.g., drive-thru, with meals only, package sales only, etc.), designated service areas within a building or site." Shreveport Code of Ordinances Section 106-1127(1).
*410 On the subjects of land use and zoning, La. Const. Art. 6, § 17 states:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
In pertinent part, La. R.S. 33:4721 sets forth the zoning powers of municipalities as follows:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict ... the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.
Pursuant to Shreveport Code of Ordinances Section 106-48, an appeal may be taken by any person aggrieved by a decision of the board of appeals for a review by the city council of such decision. After such review, the city council shall either affirm, modify, reverse or remand the decision rendered by the board of appeals. Any person aggrieved by the decision of the city council shall have the right to appeal the decision to a court of appropriate jurisdiction.

Jurisprudence
The retail liquor business is not one which any one may engage in as a matter of right. It is a privilege, for which a special license may be required, and which must be conducted according to the rules and regulations prescribed by the authority granting the license. All that the fundamental law demands in that respect is that the regulations prescribed shall have some relation to the welfare of the community. City of De Ridder v. Mangano, supra.
Due to the nature of the intoxicating liquor business, the governing authorities may impose regulations on it more stringent than other businesses. City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954).
In State v. Larson, 94-1237 (La.4/10/95), 653 So.2d 1158, where the constitutionality of a law banning nude dancing at licensed establishments serving alcohol was at issue, our court made the following observations about alcohol:
First, alcohol is an inherently dangerous substance which produces a number of harmful secondary effects such as alcoholism and drunk driving.... The state has a great interest in the regulation of alcoholic beveragesand the establishments in which they are soldto prevent adverse effects on public health, welfare, and morals.
Second, the Supreme Court contemplates that the illegal sale and consumption of alcohol is a matter to be treated as a public welfare or regulatory offense. In any event, the sale and consumption of alcohol is subject to a complex regulatory scheme. [Citations omitted.]
*411 Zoning is a legislative function, the authority for which flows from the police power of governmental bodies. King v. Caddo Parish Commission, XXXX-XXXX (La. 10/20/98), 719 So.2d 410; Prest v. Parish of Caddo, 41,039 (La.App.2d Cir.6/2/06), 930 So.2d 1207. Courts will not interfere with this legislative prerogative unless the zoning decision is palpably erroneous and without any substantial relation to the public health, safety or general welfare. King v. Caddo Parish Commission, supra; Prest v. Parish of Caddo, supra.
The zoning board has the power to grant "special use" permits. These permits allow a landowner to vary from the strict terms of a zoning ordinance. King v. Caddo Parish Commission, supra. In Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982), the Louisiana Supreme Court noted that special uses had been defined as a:
group of uses neither absolutely permitted as of right nor prohibited by law. They are privileges, in a sense, which must be applied for and approved by some designated governmental body authorized to condition the grant of permission based on a number of relevant land use considerations. Such uses of property are permitted uses, generally compatible with the zoning district but not at every location therein nor without certain standards or other requirements being met. P. Rohan, 6 Zoning and Land Use Controls § 44.01 (1981).
The procedure for issuing special use permits must be sufficiently definite to notify landowners of their right to request such a permit. King v. Caddo Parish Commission, supra. In addition, the standards for granting a special use permit must ensure equal treatment for all applicants to prevent the board of zoning appeals from exercising their power arbitrarily. King v. Caddo Parish Commission, supra. Special use classifications are entitled to the same standard of review as other zoning enactments. Morton v. Jefferson Parish Council, supra.
The property owner has the burden to establish by a preponderance of evidence that the decision to deny the special exception has no substantial relationship to public health, safety, morals or general welfare of the municipality. King v. Caddo Parish Commission, supra; Prest v. Parish of Caddo, supra.
A prima facie presumption of validity attaches to zoning board actions. A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing that the board was arbitrary and capricious or abused its discretion. Clark v. City of Shreveport, 26,638 (La.App.2d Cir.5/10/95), 655 So.2d 617; Papa v. City of Shreveport, 27,045 (La.App.2d Cir.9/29/95), 661 So.2d 1100, writ denied, 95-2544 (La. 1/5/96), 666 So.2d 295. Generally, the action of a governmental body is arbitrary and capricious and unreasonable if it bears no relation to the health, safety, or general welfare of the public. Clark v. City of Shreveport, supra; Papa v. City of Shreveport, supra.
The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. King v. Caddo Parish Commission, supra; Papa v. City of Shreveport, supra; Prest v. Parish of Caddo, supra.
Where permits are granted in similar situations and refused in others, the refusal to grant a permit may constitute nonuniform application of zoning ordinances that is arbitrary and unreasonable. Clark v. City of Shreveport, supra; Papa v. City of Shreveport, supra.
The terms "arbitrary and capricious," when used in this type of situation, mean *412 wilful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. On the other hand, when there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though one may believe that an erroneous conclusion has been reached. Prest v. Parish of Caddo, supra.
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and is therefore a taking of property without due process of law. Palermo Land Co. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990); King v. Caddo Parish Commission, supra; Papa v. City of Shreveport, supra.
A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion. King v. Caddo Parish Commission, supra.
Whenever the propriety of a zoning decision is debatable, it will be upheld. Papa v. City of Shreveport, supra; Prest v. Parish of Caddo, supra.
In determining the reasonableness of the city council's decision, the appellate court must review the opinions and concerns raised at the public hearing, as well as the testimony presented at trial. Expressions of opinion made by citizens to a legislative body serve as a manner by which the legislative body learns the will of the people and determines what may benefit the public good. Prest v. Parish of Caddo, supra.

ZBA HEARING
At the ZBA public hearing on November 14, 2007, Mr. Toups addressed the board in support of his application for a special exception use; approximately 105 persons stood in support of the application. After Mr. Angell spoke against the application, 13 people stood in opposition. Five of them stated their opposition on the record; according to the minutes, they cited as their concerns "curb cutting, saturation, lower property value, danger to lives, children's safety, close proximity to church, drunk drivers, traffic increase, etc." However, on the traffic issue, it was noted that the applicant and the current property owners had made adjustments suggested to improve road access and that DOTD had no problem with the access management plan proposed by the applicant. The application was approved by a vote of six to zero.
In its land use report, the ZBA noted that Raceway and Brookshire's both had approval for package sale of wine and beer, wine being considered a high alcoholic content beverage, while the Shell station had approval for packaged sales of beer and wine coolers, which are considered low alcoholic content beverages. It also stated that there were no protected uses (e.g., churches and schools) within 300 feet of the proposed Thrifty Liquor site.[3]

CITY COUNCIL MEETING
The record indicates that the portion of the December 11, 2007, city council meeting addressing the Thrifty Liquor issue lasted about three and a half hours. Seven individuals spoke in favor of Thrifty Liquor's proposed location. The proponents cited Thrifty Liquor's role as a "good neighbor" in the areas where its *413 stores are located, its financial and charitable contributions to the community, and the many other services its stores provide, such as Western Union, utility bill payment, etc. They also noted the commercial development of Bert Kouns and the fact that the area around the parcel in question already contains three special exception uses. Mr. Toups emphatically emphasized that selling alcohol is a legal business.
Sixteen individuals, including three pastors, addressed the city council in opposition. Also present was a civics class from Calvary Baptist Academy. Among the opponents' reasons for objecting to the proposed location of the Thrifty Liquor store were increased crime and traffic, drunk drivers, and the nearby locations of the school and churches.

TRIAL TESTIMONY
The witnesses who testified in opposition to the liquor store location had already expressed their views at the city council meeting. The proponents presented testimony detailing the efforts to develop the Bert Kouns area and the measures taken by Mr. Toups to resolve traffic matters. Mr. Tindell from the DOTD testified that he did not believe the proposed store would significantly adversely affect traffic. Corporal Collins, the liquor license approving official for SPD, indicated that he saw no particular problems from a crime perspective.

DISCUSSION
As no appeal was taken from that portion of the trial court's judgment, the rezoning of the property from R-A to B-3 is not an issue before this court. The basic issue we must resolve on appeal is whether the city council's decision to deny issuance of a special exception use permit for the sale of "package liquor, wine and beer" at the proposed Thrifty Liquor store was arbitrary and capricious.[4] To do so, we consider whether the city council's action was unreasonable under the circumstances and bore no relation to the health, safety, or general welfare of the public.
In determining the reasonableness of the city council's decision, we have reviewed the opinions and concerns asserted at the council meeting and the trial testimony. In particular, the opponents to the liquor store were concerned by its proposed location close to Calvary Baptist Church and its school and the ensuing traffic ramifications. While the proposed location is well beyond the 300-foot zone established in the ordinance and statutes prohibiting the sale of alcohol near such facilities, this fact alone does not mean that their opinions should be totally discounted as irrelevant. The presence of the school means that the area, particularly the intersection of Bert Kouns and Linwood, is traveled by many new and inexperienced teenage drivers.
The evidence demonstrates that the other three stores that sell alcohol in the same area have the current ability to sell only beer and wine whereas the liquor store would also sell "hard liquor," like bourbon, vodka and rum. Furthermore, unlike the other stores, the main commodity sold at Thrifty Liquor is alcohol. Additionally, the Thrifty Liquor store would have a drive-thru window where drinks such as frozen daiquiris sealed only by tape could be purchased by a driver who then reenters traffic. These factors, combined with the presence of novice teen *414 drivers from Calvary Baptist Academy, increase the likelihood of traffic accidents in the immediate area. This is particularly true since the intersection at Bert Kouns and Linwood appears to be the primary ingress and egress for the school.
We note that no one has the inherent right to sell alcoholic beverages. The city of Shreveport, upon a vote of its electors, could prohibit the sale of alcohol altogether. Even though alcoholic beverages are sold in Shreveport, the city has the right to prescribe rules and regulations regarding the procurement of a liquor license. The right to obtain the license is not one that flows just from having the proper commercial zoning. The business must have the proper zoning and be granted a special exception use. The authority for such special exception use is expressly granted to the city by La. R.S. 26:493. Heightened scrutiny from this regulatory authority is present because of the concern that the sale of alcoholic beverages has an effect on the public health, morals, safety and peace of an area. This examination is appropriate given the fact that alcohol serves as the nexus of many acts prohibited in the Louisiana Criminal Code.
Like the trial court, we are compelled to find that the city council's decision to deny Thrifty Liquor a special exception use in the instant case was articulably consistent with promoting health, safety, morals, or the general welfare of the community as set forth in La. R.S. 33:4721. As a result, we hold that the city council's decision was not unreasonable; therefore, it was not arbitrary or capricious.

CONCLUSION
The trial court judgment affirming the city council's denial of a special exception use for the proposed Thrifty Liquor store on Bert Kouns is affirmed. Costs of this appeal are assessed to the appellants.
AFFIRMED.
LOLLEY, J., dissents with written reasons.
LOLLEY, J., dissenting.
I respectfully dissent from the ruling of the majority in this matter.
The matter presently under consideration results from the denial by the Shreveport City Council to issue a special exception use to Thrifty Liquor Store to operate a facility at 420 Bert Kouns Industrial Loop, Shreveport, Louisiana. I am of the opinion that the actions of the Shreveport City Council in this matter constituted arbitrary and capricious conduct and were not based upon the facts, evidence and law presented.
Thrifty Liquor Store ("Thrifty") is a locally-operated (Shreveport) establishment whose primary business is retail sale of various spirits with several locations in the greater Shreveport area. Thrifty also offers other types of retail services such as Western Union grams, the sale of money orders, and even a place to pay utility bills at its various locations. The presented evidence in the matter clearly showed that Thrifty has been, and continues to be, a good business citizen who has the reputation of running good properties.
The site of the proposed Thrifty store was on the Bert Kouns Industrial Loop near its intersection with Linwood Avenue. At this location Bert Kouns Industrial Loop is a major east-west commercial arterial road which was designed and built for the movement of commercial traffic and business development. In fact, in the same area establishments such as Brookshires grocery store and several convenience stores already operate with similar permits as Thrifty had sought. The only *415 difference between the permits sought was that Thrifty's application also included a drive-through window. Additionally, the site Thrifty sought to operate on is not near a residential area or school, so the 300 foot radius ordinance did not apply.
In its pursuit of the required permits, Thrifty had to coordinate with the Shreveport Metropolitan Planning commission ("MPC") and the Shreveport Zoning Board of Appeals ("ZBA"). After review and requesting some changes to the site plan, to which Thrifty immediately complied, both bodies recommended issuance of the requested permits.
Thrifty requested a special exception to the zoning of this commercial area, not a variance. A special exception differs in that it deals with compliance with the zoning ordinance and imposes upon a board of zoning appeals the duty to grant an exception once the conditions specified in the ordinance have been met. Additionally, a special exception is superior to a variance or nonconforming use in an attempt to expand the use as of right because it allows the owner to use his property as expressly permitted by the zoning ordnance. See Sexton, J., dissenting Papa v. City of Shreveport, 27,045 (La.App.2d Cir.09/29/95), 661 So.2d 1100, 1105.
The record in this matter is very clear. Thrifty took all possible measures, and more, to assure that the proposed location met and exceeded all city and state regulations to place and operate their retail outlet. The proposed retail outlet was, in fact, the very kind of establishment that one would expect to be built on the Burt Kouns Industrial Loop. A drive in either direction for the length of this highway clearly shows same.
When the Shreveport City Council met to consider approval of this application it was met with opposition. The primary opposition was offered from Calvary Baptist Church and its school Calvary Baptist Academy. A review of the record clearly shows that both the church and its school are located considerably further from Thrifty's proposed site than the 300 foot radius outlined by law. Additionally, there was no showing that any residential areas were close enough to the site to be impacted.
The City Council was presented with arguments that allowing Thrifty to open and operate this establishment at the proposed location would create an environment of heavier traffic, drunk drivers, possible higher crime rate, etc., and the children attending the school would thereby be placed in peril. However, a review of this record simply does not support these positions in any manner. I am in agreement with the stated position that there existed, and still continues to exist, no substantial basis for the actions of the Shreveport City Council in denying issuance of the requested permits and that the actions of the city council were and are clearly arbitrary and capricious.
The matter was appealed to the First Judicial District Court. At its conclusion the trial court judge reversed the ruling of the Shreveport City Council's re-zoning of the property in question from R-A to B-3 citing the highest and best use of the property. The trial court clearly ruled properly concerning this issue.
However, I am not in agreement with the ruling of the trial court in its denial of the requested permits to build and operate the store. The trial court primarily relied on the same protestations which were presented to the Shreveport City Council. My review of this transcript shows no testimony or evidence presented which was not presented to the Shreveport City Council. I am of the opinion the denial of the requested permits in an area specifically *416 designated for business and industrial usages, when considering the facts, evidence and law presented to them clearly constituted arbitrary and capricious conduct. I am further of the opinion that the trial court's affirming of this ruling was manifestly erroneous and clearly wrong.
Based upon the above stated reasons I respectfully dissent from the majority's ruling affirming the rulings of the Shreveport City Council and the trial court judge on the issue of issuing the proper permits to construct and operate this legal business. Thrifty met all of the requirements to open and operate a business in this industrial/business area and should not have been denied the requested permits based upon the unsubstantiated complaints and fears of those who do not reside in this non-residential area.

On Rehearing
Before BROWN, GASKINS, CARAWAY, DREW and LOLLEY, JJ.
LOLLEY, J.
We granted rehearing to further review whether the Shreveport City Council (the "City Council" or "City") abused its discretion when it reversed the decision of the Zoning Board of Appeals (the "ZBA") which granted the special exception use to Roland Toups for his proposed Thrifty Liquor store and the property owners. The City Council decision was driven by the fearful concerns of a vocal opposition before it. We conclude that the denial of the special exception use was not based on objective and valid reasoning and was, therefore, arbitrary and capricious.
The appropriate standard of review for cases such as this is clear and well established, and neither party challenges the applicability of the jurisprudence. As already stated in the majority's original opinion:
The property owner has the burden to establish by a preponderance of evidence that the decision to deny the special exception has no substantial relationship to public health, safety, morals or general welfare of the municipality. King v. Caddo Parish Commission, XXXX-XXXX (La.10/20/98), 719 So.2d 410; Prest v. Parish of Caddo, 41,039 (La. App.2d Cir.06/02/06), 930 So.2d 1207.
A prima facie presumption of validity attaches to zoning board actions. A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing that the board was arbitrary and capricious or abused its discretion. Clark v. City of Shreveport, 26,638 (La. App.2d Cir.05/10/95), 655 So.2d 617; Papa v. City of Shreveport, 27,045 (La. App.2d Cir.09/29/95), 661 So.2d 1100, writ denied, 1995-2544 (La.01/05/96), 666 So.2d 295. Generally, the action of a governmental body is arbitrary and capricious and unreasonable if it bears no relation to the health, safety, or general welfare of the public. Clark v. City of Shreveport, supra; Papa v. City of Shreveport, supra.

* * *
A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion. King v. Caddo Parish Commission, supra.

In our de novo review of the matter, we have considered the proceedings before the City Council and the hearing at the trial court. In so doing, we are called to consider whether the City Council's decision to deny the special exception has no substantial relationship to the public health, safety, morals or general welfare of the municipality. Applying the applicable *417 standard of review, we conclude that the City Council acted arbitrarily and capriciously in its denial of Thrifty Liquor's special exception use for the following reasons.[1]
Initially, the record reflects that the property owners met all the requirements under the ZBA guidelines for approval of the special exception use, and, in fact, when making the application, the owners specifically addressed some of the precise concerns of the opposition. There have been no allegations that the MPC and/or the ZBA failed to properly investigate the application for the zoning change and the special exception use. Probably the most important and primary factor in granting a special exception use to sell alcohol, both high and low content, is consideration of the location. Here, the zoning of the property was ultimately determined to be B-3 (a commercial designation).[2] Additionally, the proposed Thrifty Liquor store meets the 300 feet requirement prescribed by Shreveport Code of Ordinances Sec. 10-82, which bans the sale of alcohol within 300 feet of schools, churches or synagogues, and playgrounds. Thus, the proximity of such establishments to the proposed Thrifty Liquor store is immaterial in that they far exceed the 300 feet maximum prescribed by the city ordinance, as well as La. R.S. 26:281. See Rayborn v. Livingston Parish Police Jury, 479 So.2d 401 (La.App. 1st Cir.1985).
Was there a substantial relationship to the public health, safety, morals or general welfare of the municipality to justify the denial of the special exception use by the City Council, and subsequently the trial court? We believe the evidence indicates not. The opposition presented at the City Council and the trial court was essentially the same, and almost entirely all of it came from members of two nearby churches and their employees (in fact, the appeal to the City Council was brought by a pastor of one of the churches). Arguments and concerns were made that the Thrifty Liquor would create an environment of heavier traffic, drunk drivers, and a higher violent crime rateall of which would put the children attending the nearby church school in peril. Of course, we recognize that heavy traffic, drunk drivers and high crime are each a bane to our society in general. However, as already stated in the dissent to the original opinion, a review of the record does not support these concerns as they pertain to this particular Thrifty Liquor storethere were no objective facts presented to support the arguments of the opposition.
We wholeheartedly respect the importance of public opinion as it relates to zoning issues, and here, the special exception use. Furthermore, we acknowledge the following assertion from King, supra: "Because zoning falls under the jurisdiction of the legislature, courts will not interfere with their prerogative unless their action is palpably erroneous and without any substantial relation to the public *418 health, safety or general welfare." Id. at 418, citing, Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La. 1974). Additionally, we observe the following from Four States Realty Co., supra, that:
The terms "arbitrary and capricious action" when used in a manner like the instant one, must mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. On the other hand, when there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.
Id. at 665, citing Rathkopf, The Law of Zoning and Planning, 3rd ed.1974, Cumulative Supp. Vol. 1, pages 2-26 (emphasis added). Had this been a case involving only two opposing opinions, it stands that the City Council's choice between the two would not have necessarily been arbitrary or capricious. However, in this case, neither the City Council nor the trial court was presented with "two opinions." Rather, they were presented with the opinion of the opposition versus the rational and objective facts supporting the application. The opposition could have supported their opinion with facts, but failed to do so. Ultimately, we conclude that when an opinion is not substantiated but is merely unfettered fear, and that opinion is weighed against objective fact, then the denial of the special exception use is necessarily arbitrary and capricious.
One of the chief concerns mentioned by the opposition was traffic. In fact, as one of its reasons for affirming the denial, the original majority opinion noted traffic concerns especially with "novice teen drivers" from the Calvary Baptist Academy. The original majority opined that the Thrifty Liquor would increase the likelihood of traffic accidents in the immediate area as a result of patrons being able to purchase a frozen drink at the drive-thru window. Notably, Bert Kouns Industrial Loop is a major arterial road (as suggested by its name), which, according to Roy Jambor, senior planner for the Shreveport Metropolitan Planning Commission of Caddo Parish, means the highway sees "a lot of traffic." That is obvious just by looking at itBert Kouns Industrial Loop is a multi-laned highway with a high speed limit, which is indicative of heavy traffic. We take judicial notice that there already is heavy traffic on Bert Kouns Industrial Loop, and there was no objective evidence by the opposition that showed that this particular establishment would add dangerously to the traffic. This type of commercial business is perfectly compatible with the nature of the area, and it does not reason that a purely speculative increase in traffic by one more business, in a commercial district, should be a basis for denial.
Additionally, at the MPC stage of the zoning application, the possibility of increased traffic was thoroughly addressed. The trial court considered the testimony of Byron Tindell, the district traffic operations engineer with the Louisiana Department of Transportation and Development (the "DOTD"). Tindell confirmed that Bert Kouns Industrial Loop was a state highway (which he categorized as a "principal arterial") within his jurisdiction, and as a result, he had reviewed the application made by Toups. He testified that generally when the DOTD considers a zoning proposal, he looks at safety concerns and decides whether:
we need to shift a driveway, do we need to signalize an intersection, do we need to add turn lanes, just what is needed to provide adequate access to *419 the proposed development as well as keeping it safe for not only constituents coming in and out of the business, but the people that are traveling up and down the highway that may not even be going there....
Ultimately, after consultation with Tindell, the MPC came up with a plan for the store which would not adversely affect traffic in that area for a single business like Thrifty Liquor. In short, traffic concerns were addressed and changes made to the satisfaction of the MPC. Moreover, there was no evidence by the opposition that there were more drunk drivers in the vicinity of such a package liquor store, a related concern propagated by the opposition. We fail to see how the drive-thru window would necessarily equate to drunk drivers in the immediate area. As described, the drive-thru window is used for various transactions at the Thrifty Liquor, not only purchasing frozen alcoholic beverages. Realistically, an individual who is prone to break city and state ordinances and imbibe in an alcoholic beverage in her vehicle will be just as likely to purchase a cold beer at the nearby Shell or Raceway stations as she would be to drive through at the Thrifty Liquor.
Another concern of the opposition was that crime would increase because of the liquor store. Again, there was no factual support before the City Council or the trial court that in any way proved this assertion. The opposition had some articles printed off the internet; however, those articles were unsubstantiated. Notably, one of the articles brought before the City Council and relied upon by the opposition had nothing to do with crime and Thrifty Liquor locations in Shreveport, Louisianathey pertained to crime studies in Oakland, California. Such evidence is hardly persuasive to support the position that liquor stores attract violent crime. Unsubstantiated fear of crime that may come is hardly a legitimate, logical or legal reason to deny the special exception use for this particular business, no matter how many people might speak out and share the opinion.
As observed herein, the City of Shreveport had every resource to prove that the fears of the opposition were valid, yet it failed to do so. Surely, the City had the ability to present objective evidence that more violent crime, higher traffic, and drunk driving exists in the vicinity of the various Thrifty Liquor stores in Shreveport.[3] Those types of statistics would readily be available to the City in that they all pertain to areas in which the City has direct controltraffic and crime. Moreover, we believe that the fears of the opposition can also be addressed in legal and more appropriate ways than in denying a property owner the legal due process rights to his property. If the citizenry in the area are concerned with traffic on Bert Kouns Industrial Loop they can entreaty the City to address the high traffic in the area through its office of Traffic Engineering; as to crime, the Shreveport Police Department is available to increase patrols in the area; as to the proximity of liquor to their churches and schools, they can lobby their state legislators and city leaders to increase the minimum distance at which those establishments can sell alcohol; and, finally, as to drunk driving, they can fight for tougher DWI laws with stiffer penalties, advocate for more persistent police methods to apprehend drunk drivers, and support education for minors regarding the dangers of drunk driving.
We also distinguish the facts of this case from those of King, supra. In King, the plaintiffs wanted a special exception *420 use and a variance in order to permit video poker at their truck stop. Notably, the truck stop was in a rural area that was zoned B-2, a lighter commercial area than that which is at issue here. There were single-family and multi-family residences close by in the surrounding area. Moreover, the other establishments in the vicinity that had been granted a special exception use for video poker were not similarly situated in that they were in an area with different zoning.
Finally, we acknowledge the applicability of La. R.S. 26:493, which specifically states as follows:
Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. (Emphasis added).
A municipality may only regulate the business of selling alcoholic beverages no "more than is necessary" to protect the public health, morals, safety, and peace. In other words, a parish or municipality does not have absolute empowerment to regulate alcohol, because it cannot exceed that which is necessary to protect the public health, morals, safety, and peace.
Here, in denying the special exception use for the Thrifty Liquor, the City Council did more than was necessary to regulate the business of selling alcohol in light of the objective evidence before it. There was absolutely no substantial relationship to the public health, safety, morals or general welfare of the City to justify the denial of the special exception use, because the fears expressed in opposition to the special exception use for the proposed Thrifty Liquor were not based on fact. The City Council allowed unfettered fear and rank speculation to lead to unnecessary and illegal action. As stated, we have great respect for the will of the people. However, when considering the nature of the location on a major, arterial thoroughfare, we believe the City Council exceeded its power and did more than was necessary by denying the special exception use to Toups and the property owners. Therefore, we conclude that the Shreveport City Council acted arbitrarily and capriciously in denying the special exception use, and the trial court's subsequent determination affirming that decision was in error.

CONCLUSION
The trial court's judgment affirming the Shreveport City Council's denial of a special exception use for the proposed Thrifty Liquor store on Bert Kouns Industrial Loop is reversed. Costs of this appeal are assessed against the City of Shreveport in accordance with the provisions of La. R.S. 13:5112 in the amount of $2,710.47.
REVERSED AND RENDERED.
GASKINS, J., respectfully dissents for the reasons expressed in the original opinion.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
This case concerns the legislative vote of the elected representatives of the Shreveport City Council for the regulation of the retail selling of alcoholic beverages. Using inappropriate standards of review for a legislative enactment with an obvious public welfare concern, the majority requires the decision of the elected council to *421 demonstrate a heavy "substantial relationship" for protecting the public safety and welfare, and then easily strikes down the council's safety concerns as "arbitrary and capricious." I believe the appropriate standard of judicial review is a minimal rational-basis review where any reasonably conceivable state of facts disruptive of the public safety should constrain a court from stopping the council's employment of such safety measures regarding alcohol sales in the city.
With an express grant of regulatory power from the Louisiana legislature, La. R.S. 26:493, the City is fully empowered as a subdivision of the state to regulate the alcohol business for what is "necessary for the protection of the public health, morals, safety and peace" of the public. Once the elected representatives vote to regulate and limit the retail package liquor outlets for the alcoholic beverage industry, as they have in this case, by what standard of review may this court decide that the city council's assessment for the public health, morals, safety and peace of its citizens is improper? In fashioning that standard of review, the judiciary can easily make itself a super-city council for city government unless the proper deference is given. That deference is determined primarily by consideration of whether the plaintiffs in this case have a constitutionally protected property interest in the alcoholic beverage permit which the City refused to issue. If they have no "property" within the general due process protection of our state and federal constitutions, neither of which otherwise specifically secures a right for the selling of alcoholic beverages, this court's deference to the city council's determination of the welfare of its citizens must be great. Likewise, as shown below, similar deference is given to the governmental action in an equal protection claim asserting disparate treatment.
Nevertheless, without consideration of the complete lack of a constitutionally protected "property" interest, the majority now applies a standard of judicial review on par with the standard for review of governmental zoning regulations of land use. The distinction missed by the majority is that land use regulation implicates a constitutionally protected property interest, while regulation of the sale of alcoholic beverages does not. The fundamental protection of one's "liberty" and "property" under the due process clauses of our state and federal constitutions does not extend to the selling of alcoholic beverages. The Louisiana Supreme Court has repeated in various contexts that "there is no inherent right in a citizen to sell intoxicating liquor." City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954); State v. Larson, 94-1237 (La.4/10/95), 653 So.2d 1158. Even more important, the legislature itself by the enactment of our local option election laws, La. R.S. 26:581, et seq., recognizes that state action through a vote of the people in local subdivisions may prohibit altogether the sale of alcoholic beverages. Such legislation is presumed constitutional and is therefore reflective of the legislature's understanding that no fundamental "liberty" or "property" interest is violated by a total ban of alcohol sales. Similarly, the constitutional protection and directives for "land use" and zoning as addressed in Article 6, § 17 of the Louisiana Constitution are not offended by the legislative allowance for the total prohibition of the sale of alcoholic beverages or the regulation thereof.
In addition to its delegation of power to the electorate for the total prohibition of the sale of alcohol, the legislature has delegated the following power of regulation to a municipality:
Except as limited by the provisions of this Chapter the various subdivisions of *422 the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.
La. R.S. 26:493. This authority has allowed Louisiana municipalities to prevent, among other things, the playing of music in a barroom, City of De Ridder v. Mangano, 186 La. 129, 171 So. 826 (1936); keeping a liquor establishment open at certain prohibited times, City of Baton Rouge v. Rebowe, supra; selling of alcohol on Sunday, City of Shreveport v. Belk, 260 La. 1041, 258 So.2d 79 (1972); and persons under age 21 from purchasing alcohol, City of Lafayette v. Elias, 232 La. 700, 95 So.2d 281 (1957).
While the City of Shreveport has enacted by ordinances a particular procedure through its planning commission, zoning board, and city council for the process of approval of a so-called "special exception use" for the sale of alcohol, the City's basic authority to act regarding alcohol is La. R.S. 26:493, which is its delegated regulatory power from the legislature. The council's final vote is therefore a legislative action by a political subdivision of the state whose power is an extension of the power of the legislative branch. As our Supreme Court has said, "[i]n considering the City's authority, it is well settled that the state's political branches retain plenary authority to do all things not expressly forbidden by the Constitution." Civil Service Com'n of City of New Orleans v. City of New Orleans, 02-1812, 02-1815 (La.9/9/03), 854 So.2d 322, 326. Under our separation of powers form of government, the judiciary therefore may not overrule this legislative action of the council unless the constitutional protections afforded the plaintiffs against undue governmental intrusion upon their protected rights have been violated.
Such delegation of power to the City was not placed by the legislature under the municipal power for zoning, La. R.S. 33:4721, et seq., but within Title 26, the alcoholic beverage control law. This distinction is most important. The object of this regulatory power being a commercial product, alcohol, the constitutional protection against the over-regulation of private property through land use restrictions is not implicated. In the land use context, the United States Supreme Court jurisprudence regarding the Takings Clause of the Constitution has employed the maxim, "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Nevertheless, the public regulation of the trade of alcohol clearly does not involve a confiscatory regulation which "denies all economically beneficial or productive use of land." See, Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Again, this is not a zoning case or a takings case for the same reason that substantive due process protection is not present. There is no "property" at stake here under the Fifth and Fourteenth Amendments or any similar protection of our state constitution.
*423 A principal emphasis of the plaintiffs' argument concerns the City's regulatory choice to allow liquor sales at allegedly "similarly situated" commercial outlets nearby plaintiffs' property. Although plaintiffs do not specifically raise a constitutional equal protection challenge to the City's action, their argument is the same and the law pertaining to equal protection should guide us in our standard of review. "In contrast to a due process action, which looks solely to the government's exercise of its power vis-a-vis the [claimant], an equal protection claim asks whether a justification exists for the differential exercise of that power." Mikeska v. City of Galveston, 451 F.3d 376, 381 (5th Cir.2006). The classification claim which plaintiffs' argument implicitly presents is that their proposed commercial establishment is a "class of one" which has received discriminatory application of the City's regulatory power.
In Louisiana, the classifications for our equal protection guarantee are set forth in La. Const. art. I, § 3 which provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
Louisiana's equal protection standards command the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. State v. Granger, 07-2285 (La.5/21/08), 982 So.2d 779. The discriminatory classification argument plaintiffs now raise falls at best into the third category of our equal protection law. Laws that create classifications in the third situation are presumed to be constitutional and the party challenging the constitutionality of the law has the stringent burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. Id. This minimal rational-basis test comports with the equal protection analysis applied under the Fourteenth Amendment.
In the federal context, the recent ruling of the United States Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), applied equal protection in the so-called "class of one" category for a claim against a municipality's action. In this case, the municipality required plaintiffs to provide a larger water easement for water service to their property than the prior easements required of others. The court ruled in a per curiam opinion as follows:
Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In so doing, we have explained that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure *424 every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." [Citations omitted]
That reasoning is applicable to this case. Olech's complaint can fairly be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners. [Citation omitted] The complaint also alleged that the Village's demand was "irrational and wholly arbitrary" and that the Village ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis.
Id. 528 U.S. at 564-565, 120 S.Ct. 1073. In the wake of Olech, the equal protection cases brought by plaintiffs disappointed by state and municipal regulatory decisions have increased, as reviewed extensively in the recent ruling in Lindquist v. City of Pasadena, Texas, 656 F.Supp.2d 662 (S.D.Tx.2009). Instead of an attack on a city's action in state court, the federal courts under 42 U.S.C. § 1983 are asked to review the regulatory decisions under the equal protection analysis.
In these equal protection claims, the federal courts apply a strict measure of whether "similarly situated" parties are present and receiving favored treatment, and such scrutiny results in the rejection of many "class of one" claims even before the minimal rationality test is employed. Beeler v. Rounsavall, 328 F.3d 813 (5th Cir.2003), cert. denied, 540 U.S. 1048, 124 S.Ct. 820, 157 L.Ed.2d 697 (2003) (the court found that the "similarly situated" requirement as not met in an alcohol regulatory ruling because "whereas [plaintiff] was applying for a new permit, the [parties next door] were applying to renew an existing permit."); Unique Properties, LLC v. Terrebonne Parish Consolidated Gov't, 2004 WL 1278001 (E.D.La.2004); and Lindquist v. City of Pasadena, Texas, supra.
In the present case, plaintiffs' assertion of the "similarly situated" parties and arbitrariness is in essence a claim that after the City's first issuance of authority to any commercial dispenser of alcohol, no other applicant for such alcoholic beverage allowance can be rejected. As reviewed in our initial ruling, the "hard liquor," "drive-thru" dispensary now sought by plaintiffs creates a clear distinction revealing that the nearby establishments identified by plaintiffs are not similarly situated.
The second prong for the measure of these class-of-one equal protection claims is the rational-basis test for the governmental action. Under a rational-basis review, a court affords governmental decisions a "strong presumption of validity," and will uphold a governmental decision "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Heller v. Doe by Doe, 509 U.S. 312, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). Rational basis review is an extremely lenient standard of review; therefore "[a]ttacks against zoning ordinances under this test are rarely successful." Baker v. St. Bernard Parish Council, 2008 WL 4681373 (E.D.La.2008) (quoting Wood Marine Service, Inc. v. City of Harahan, 858 F.2d 1061, 1066 (5th Cir.1988)). Even if the court is convinced that the political branch has made an improvident, ill-advised, or unnecessary decision, it must uphold the act if it bears a *425 rational relation to a legitimate governmental purpose. Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1241 (11th Cir.1991). Rational basis review is "a paradigm of judicial restraint" and "[w]here there are `plausible reasons' for [the government decision], `[the] inquiry is at an end.'" F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).
Moreover, the city council's legislative action in classifying the "drive thru," "hard liquor" business differently from other retail sales outlets did not require the council's articulation of the reasons for its vote. A legislative action that creates a category or "class of one" distinction need not "actually articulate at any time the purpose or rationale supporting its classification." Nordlinger v. Hahn, 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992). A state, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. Heller v. Doe by Doe, supra at 2643. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. F.C.C. v. Beach Communications, supra at 2098. The problems of government are practical ones and may justify, if they do not require, rough accommodationsillogical, it may be, and unscientific. Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 68-70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913).
Ignoring this great deference owed to the council's decision, the majority's misguided analysis apparently insists that direct evidence of accidents or criminal misconduct must be obtained by the council before a public safety threat can be recognized and acted upon. In its stated opinion, the majority fails "to see how the drive-thru window would necessarily equate to drunk drivers" along this busy thoroughfare of the city. That may reflect a vote the majority might make as council members, but a judicial majority does not have plenary legislative authority. Without direct proof of this threat to the public's safety, the majority apparently will not allow council consideration of the obvious circumstantial implication that more numerous and convenient liquor sales at this location can present a threat to public safety. That is not a minimal rational-basis measure; it is the substitution of the majority's speculative opinion for a plausible conclusion that the elected body may reach. The mode of the alcohol sales for the plaintiffs' proposed establishment and the alcohol content of the products are highly relevant factors for a public safety policy assessment and provide a rational basis for the City to regulate and prohibit this proposed business of selling alcohol for the protection of the public health, morals, safety and peace. Without honoring the separation of power between the council's plenary legislative authority to govern its municipality and the judiciary, the majority now overrules the city council on the basis that the City should have no fear for safety regarding the effects of this dispensing of alcohol within its jurisdiction.
As summarized by Professor Shelley Ross Saxer in License to Sell: Constitutional Protection Against State or Local Government Regulation of Liquor Licensing, 22 Hastings Const. L.Q. 441, 487-488 (1995):
Courts will probably not apply a strict scrutiny standard to challenged liquor license regulatory actions, unless such actions disproportionately affect a suspect classification or fundamental right and there is evidence of discriminatory motive. Moreover, since liquor license regulations and land use regulation of liquor outlets affect only the economic interests of the licensee or landowner, *426 the application of a rational relationship standard is appropriate in most instances. Under this standard, the regulatory action will be valid provided a rational basis supports it. One of the greatest justifications for regulatory action is the protection of the health, safety, welfare, and morals of the communities affected by overconcentration of liquor stores. Indeed, the harmful effects that liquor stores have on the communities they serve have become more evident throughout the country. Based on these considerations, it is doubtful that equal protection challenges will be successful against most liquor license regulation.
From the above review, the "arbitrary and capricious" test voiced in our prior cases is, in my opinion, inappropriate as employed for the measure of the goals of public health, safety and morals, all concepts upon which reasonable parties can differ. Thus, a judicial measure or standard of review of whether the city council was arbitrary and capricious with the public welfare is itself vague and somewhat arbitrary, imposing no judicial restraint in its application.[4] Instead, judicial review is better articulated in the "rational basis" language employed in the equal protection cases under both our state and federal constitutions. Therefore, the rational-basis standard of review, in my opinion, should be whether the disadvantage imposed upon plaintiffs by the denial of the alcoholic beverage authority in this case does not suitably further any appropriate state interest for the protection of public health, morals, safety and peace of the municipality.
Despite the fact that the plaintiffs have not formally asserted that the vote of the city council was an unconstitutional legislative act depriving them of protected property or arbitrarily classifying them so as to deny the equal protection of the law, the governmental action of the council may not be judicially challenged unless such deprivation of constitutionally-protected rights has occurred. Therefore, the constitutional principles shown above must govern to determine through judicial review if the City's classification of plaintiffs' proposed business violated their rights. A rational-basis review is called for in order to foster judicial restraint, which is now absent in the majority's veto of the elected representatives' action on behalf of the City of Shreveport. Had this case and the companion case now in this court, Racetrac Petroleum, Inc. v. City of Shreveport (45,120-CA), 45,120 (La.App.2d Cir.7/21/10), 2010 WL 2836901, ___ So.3d ___, been brought instead in the federal courts for the same review of the city council's rulings, this minimal rationality test would likewise apply giving to the City's action the strong presumption of validity. This anomaly between the majority's measure of state action and the federal court rulings for identical disputes must end. The required deference has now been masked over by the vagueness of an "arbitrary and capricious" test imposed without judicial credit in this case to the plausible reasons for the elected representatives' actions in regulating the alcohol beverage business. *427 It is clear to me that had these plaintiffs initiated these same challenges to the City of Shreveport in federal court, the outcome would be completely different because of the special deference to the elected body that would be given under the appropriate rational-basis standard of review.
NOTES
[1] The record indicates that the nearest drive for the closest church, Calvary Baptist Church, is at least 1,581 feet away from the nearest property line for the proposed liquor store site.
[2] The same definitions for these terms are also utilized in Section 10-1 of the Code of Ordinances for the City of Shreveport.
[3] Section 10-82 of the Code of Ordinances for the City of Shreveport generally prohibits the sale of alcoholic beverages within 300 feet or less of playgrounds, churches, synagogues, full-time day care centers, public libraries or schools. See also La. R.S. 26:81 and 26:281.
[4] Although some language in the jurisprudence refers to the judicial review of the action by the "zoning board," in the context of the instant case, it is clear that the "zoning board" whose actions are being reviewed is the city council, not the ZBA.
[1] We note the dissenting opinion by Judge Sexton in Papa v. City of Shreveport, supra. Judge Sexton dissented from the majority, which upheld the denial of a special exception use for alcohol sales, believing that the City Council's actions were arbitrary and capricious. Further, he pointed out in his dissent that a special exception use is superior to a variance, because it allows the owner to use his property as expressly permitted by the zoning ordnance. Id. at 1105.
[2] Although the City Council reversed the MPC's zoning of the property from R-A to B-3, the trial court properly reversed that determination, finding that the City Council's actions were a "non uniform zoning treatment and inconsistent use of police power, which is arbitrary and capricious...." That issue is not before this court on appeal.
[3] The stores have been located in the Shreveport/Bossier City area since 1961.
[4] As cited in our original ruling, the initial ruling of the Louisiana Supreme Court following Prohibition allowed the Louisiana municipalities under the authority of La. R.S. 26:493 to enact regulations with "some relation to the welfare of the community." City of De Ridder v. Mangano, supra. Our initial opinion articulated this minimal rationality standard at times, but also voiced an "arbitrary and capricious" standard of review which I now find unhelpful. The municipality's action may be said to be "arbitrary and capricious" only after a finding that no rational basis for the differential treatment exists.